27  687|
q144 331|

# GARRETT'S ADM'RS *vs.* GARRETT & GARRETT.

[ASSUMPSIT FOR MONEY HAD AND RECEIVED.]

1. *When court may charge jury on evidence of single witness.*—Where the evidence of a single witness tends to prove certain facts, which present a particular phase of the case, the court may properly instruct the jury on the effect of his testimony (if believed by them), without noticing the other evidence in the cause : such a charge does not, either expressly or by implication, exclude the other evidence from the consideration of the jury ; and if such an inference is apprehended, it may be guarded against by asking other instructions.

2. *When statute of frauds will not prevent recovery for money had and received under executed parol contract.*—Conceding that a purchase of lands at execution sale, under a parol agreement with the defendant in execution to purchase for his benefit, will enure to the benefit of the purchaser himself, under the operation of the statute of frauds ; yet, if the purchaser re-sells the lands, taking a note for the purchase money, and places this note in the hands of a third person for the benefit of the defendant, the latter may maintain an action for money had and received, to recover its proceeds when collected, and the statute of frauds is no defence to the action.

3. *Admissions, conclusiveness of.*—Admissions, to be conclusive on the party making them, must be made under such circumstances as to amount to an estoppel *in pais.*

4. *Insolvent laws of Georgia construed, and held no defence to action for recovery of property omitted from schedule.*—Under the insolvent laws of Georgia, as shown in evidence in this case, the insolvent debtor is not divested of his title to property omitted from his schedule ; and although such property may be subjected to the satisfaction of his debts, yet his debtor cannot take advantage of the omission to defeat a subsequent action for the recovery of the property.

5. *Statute of limitations begins to run at what time.*—If a surety for the defendant in execution, having control of the judgment, under an agreement to hold and use it for the defendant's benefit on his payment of it, purchases his lands at execution sale, and afterwards re-sells them, taking a note for the purchase money, which he places in the hands of a third person for the benefit of the defendant, who afterwards brings an action to recover its proceeds,— the statute of limitations does not begin to run from the payment of the judgment, but from the subsequent receipt of the money.

6. *General objection to evidence, of which part is legal.*—When a general objection is made to evidence, of which part is legal, the entire objection may be overruled.

7. *Specific objection to evidence waives other objections.*—An objection to evidence on a single specified ground is a waiver of all other objections to it.

8. *Objections to parol evidence, on the ground that it tended to vary the legal effect of a sale under execution, considered and overruled.*

9. *Evidence held relevant and corroborative.*—Where two witnesses testify to a payment of money,—one stating that it was made before the commencement of the action, and the other not specifying the time at all, the testimony of the latter cannot be rejected as irrelevant, but must be regarded as corroborative of the former.

ERROR from the Circuit Court of Chambers.
Tried before the Hon. EZEKIEL PICKENS.

THIS action was brought by Jesse H. Garrett and Blount S. Garrett, in February, 1849, to recover a certain sum of money (say $650) had and received by the defendant, John Garrett, for their use and benefit, under the following circumstances: In August, 1832, one Anthony Dyer recovered a judgment for about $2,000, in the Superior Court of Upson county, Georgia, against Bacon & Peavy, and also against the plaintiffs in this suit, as their accommodation endorsers. John Garrett and one Martin W. Stamper, at the request of the said Jesse H. and Blount S. Garrett, gave their notes to Dyer for the amount due on this judgment, which notes were endorsed by the said Jesse H. and Blount S. Garrett, and Dyer transferred to them the control of the judgment; and for their further security and indemnity Jesse H. and Blount S. Garrett placed in the hands of one Joseph Sturgiss, who was the attorney of said Dyer, notes on third persons to the amount of $1,600, with instructions to apply the proceeds, when collected, to the payment of the notes given to Dyer. At the time this arrangement was entered into, it was agreed by parol between the several parties that Stamper and John Garrett should control the judgment for the benefit of said Jesse H. and Blount S. Garrett, and after the payment by them of the debt to Dyer the balance collected on the judgment and notes was to enure to their benefit; the sole object of the transaction being to secure Stamper and John Garrett against liability on their notes. An execution, issued on this judgment, was levied in December, 1833, on a certain tract of land, as the property of Jesse H. and Blount S. Garrett; and at the execution sale Stamper became the purchaser, and credited the amount of his bid on the execution. This tract of land Stamper subsequently exchanged for another, and sold the latter tract, in 1844, to one Robert Scandrett, taking his

note for the purchase money. When this note fell due, Stamper "handed it over to John Garrett, for the benefit of Jesse H. and Blount S. Garrett"; and the money collected by John Garrett on this note, in December, 1844, is the money sued for in this action.

The declaration contained only the common money counts, and the only plea was the general issue, with leave to give any special matter in evidence.

On the trial, as appears from the bill of exceptions, the plaintiff read in evidence the depositions of said Stamper, Sturgiss, and Scandrett, whose testimony establishes the facts above stated. In his answer to the tenth direct interrogatory, Stamper states, "that he had some houses and lots in the town of Thomaston, which he considered the property of Jesse H. and Blount Garrett after a debt was settled for which himself and John Garrett were bound; and the understanding was, that he was to sell or dispose of said property as he thought proper, and that he swapped the houses and lots in Thomaston for the lot in Stewart county sold to Scandrett." The defendant objected to this answer being read in evidence, "because the same concerns the title to real estate, of which there is better evidence"; but the court overruled his objection, and he excepted.

The answer of the witness Sturgiss to the second direct interrogatory is as follows: "The plaintiffs had been engaged in merchandize at Thomaston as partners, and were liable to Anthony Dyer, as endorsers of Bacon & Peavy, on a judgment for $2,533 83 principal, interest to 28th August, 1832, $134, with costs; and Dyer, by his attorney, transferred the same to Martin W. Stamper and John Garrett, who thereby obtained the control thereof, by giving their notes to Dyer, with the plaintiffs as their endorsers, for the amount of the same, or the part then unpaid, if any part of the same was paid, of which witness has no recollection. This transfer was made at Thomaston, Upson county, Georgia, on the 18th February, 1833." The defendant moved the court to exclude this answer from the jury, "because it tended to vary the terms of the sale, and the effect of the title which was made to Stamper, and the legal effect of the sale"; and, in support of his motion, read in evidence the statute of frauds of Geor-

44

gia, found in Prince's Digest, p. 915, § 4, and showed that, under the statutes of Georgia, the sheriff is required to make to the purchaser of lands a deed conveying all the legal and equitable interest of the defendant in execution. The plaintiffs thereupon stated, that the deposition of Sturgiss was offered in evidence in connection with the deposition of Stamper, and with certain statutes of Georgia, regulating the issue and levy of executions, and making judgments and executions transferrable by written assignment; which statutes may be found in Prince's Digest, p. 436, § 1, and p. 464, § 1. The court overruled the motion to exclude, and the defendant excepted.

The defendant then made a separate motion to exclude, for the same reason, each separate clause of each separate answer of the witnesses Sturgiss and Stamper to the direct interrogatories; but the court overruled each motion, and the defendant excepted. These answers are too long for insertion; nor, indeed, is it necessary to state them in full, since the substance of the evidence, which is above stated, presents the objections as clearly as do the entire answers.

The answer of the witness Sturgiss to the fifth direct interrogatory is as follows: "Witness cannot state whether the notes to Dyer have been fully paid off, except what he has heard from the Garretts and Stamper. Agreeably to his best recollection, he has been informed by all the parties, the Garretts and Stamper, that the notes, or the judgment obtained by Dyer on the notes, were fully paid off and discharged. Witness applied all the money he collected to the same: how much he cannot now state, as he has no full memorandum, and time has effaced it from his memory; but witness feels satisfied, the last he heard of the debt from Dyer, that *there was a balance due, which, as he subsequently learned from all the Garretts and Stamper, was fully paid.*" The defendant moved to exclude from the jury the italicized portion of this answer, "because the witness does not state at what time (whether before or since the commencement of this suit) the Dyer debt was paid off"; but the court overruled his motion, and he excepted.

The answer of the same witness to the fifth cross-interrogatory is as follows: "Witness states that the sale of the said

lots in Thomaston was before the plaintiffs filed their schedule under the insolvent debtors' act of Georgia. The house and lot was not in the schedule, and witness so advised plaintiffs, as the title was then in Stamper, the purchaser, who held the legal title for the purpose of realizing the full value thereof, to be applied to the payment of the Dyer debt. Stamper then informed the witness that the house was purchased with that view and purpose alone; and witness knows that neither he, nor Stamper, nor the defendant looked to it any further than as a trust fund, or for the creation of a trust fund, to be so applied. It was not the plaintiffs', and witness then advised them that it should not be included in their schedule. *The plaintiffs, at the time of filing their schedule, did not include any of the assets turned over to indemnify the defendant and Stamper, and witness advised them that they had no right so to do.* Witness was then satisfied, from his knowledge of the plaintiffs' affairs in these transactions, that the assignment of the assets placed with him was not intended by them to defraud any other creditor, or to conceal their effects, or to practice a fraud on their creditors in that behalf. He does not now recollect what their schedule contained." The defendant moved the court to exclude from the jury the italicized portion of this answer; but the court overruled the motion, and the defendant excepted.

The defendant offered in evidence, 1st, a transcript of the record of the Superior Court of Upson county, Georgia, showing the plaintiffs' application for the benefit of the insolvent debtors' act of Georgia, and their final discharge under the order of the court in August, 1833; 2dly, certain statutes of Georgia, which may be thus described: The insolvent debtors' act, to be found in Prince's Digest, p. 286, §§ 1 to 9; the statute of frauds, on page 915; certain statutes in relation to sales under execution, &c., on pages 431, § 43, 458, § 163, 473, § 223. The defendant read in evidence, also, the deposition of Thos. W. Goode, who testifies, that he was one of Dyer's attorneys in the suit against Bacon & Peavy and Jesse H. and Blount S. Garrett, and was instrumental in procuring Stamper and John Garrett to become liable for the debt; that the transfer of the judgment to Stamper and John Garrett was absolute; that he afterwards brought suit, as attor-

ney for Dyer, and recovered judgment, on the notes given by Stamper and defendant; and that defendant paid him $400 on this judgment. The defendant offered evidence, also, of admissions made by Blount Garrett, in the presence of Jesse Garrett, at a settlement had between Blount and John Garrett in the fall of 1848, to the effect that he had no claims against said John Garrett. There was some other evidence in the case, but it is immaterial.

The court charged the jury as follows:

"1. That if they believed from the evidence that the money sued for arose from any contract for lands, or any interest in lands, then, unless there was written evidence which bound the defendant to pay it, they must find for the defendant; but if the money sued for arose in the way stated by the witness Stamper, then the statute of frauds would be no defence.

"2. That mere admissions, of one or both of the plaintiffs, do not bar this action, if the jury believe from all the evidence taken together, including the admissions, that the defendant, at the commencement of this suit, was justly indebted to the plaintiffs, and has never paid."

The defendant excepted to each of these charges, and then asked the court to instruct the jury, "That if they believe from the evidence that plaintiffs are suing for money which arises on a note on Robert Scandrett, given for the price of a lot of land sold to him by M. W. Stamper; that the title was in Stamper at the time the lot was sold; and that plaintiffs had no right to it, except by virtue of a parol agreement with Stamper and defendant, that they should have it after the debt to Dyer was paid off,—then they must find for the defendant." This charge the court gave, and then added, "But, if they believed the testimony of the witness Stamper, then the statute of frauds was no defence, and, so far as it was concerned, their verdict should be for the plaintiffs, for the price of the land, with interest from the time the defendant received the money"; and to this qualification of the charge the defendant excepted.

The defendant then asked this further charge, "That if plaintiffs applied for the benefit of the insolvent laws of Georgia, and obtained a discharge as shown by the evidence, and the money now sued for arises from the sale of property which

they had placed in the hands of the defendant, or of the defendant and Stamper, a few months before their application was made, and said funds were placed in his or their hands to pay the Dyer debt, and then to pay the balance to the plaintiffs,—then they must find for the defendant." The court refused this charge, and the defendant excepted.

The defendant then asked this further charge, "That if this arrangement was made in the year 1833, and the Dyer debt has been paid off more than six years before the commencement of this action, and the defendant has been a resident citizen of this State since 1835,—then they must find for the defendant." The court gave this charge, and then added, "But, if the money was not received by the defendant until 1844 or 1845, as shown by the witness Stamper, the action would not be barred"; and to this qualification the defendant excepted.

The errors now assigned embrace all the rulings of the court on the evidence, the charges given, and the refusals to charge as requested.

WHITE & PARSONS, for the plaintiffs in error:

1. The first charge by the court, as it stands, is erroneous; but the first branch of it is correct.—Larkins v. Rhodes, 5 Porter, 195; Pitts v. Waugh, 4 Mass. 424; Smith v. Burnham, 3 Sumner's R. 435; Lamar v. Bailey, 2 Vermont R. 627; Parker v. Bodley, 4 Bibb's R. 102; Patterson v. Ware, 10 Ala. 444; Rowland v. Boyer, 10 ib. 690. But the qualification to this charge, and more particularly the qualification added to the first charge asked by the defendant, as to Stamper's testimony, is erroneous. It is objectionable as a charge on a part of the evidence only, which necessarily excluded from the jury the consideration of the other evidence in the case; because it invaded the province of the jury; and because it assumed that there was no conflict in the evidence as to the facts to which Stamper testified.—Lewis v. The State, 21 Ala. 218; Holmes v. The State, 23 ib. 17; Dill v. The State, 25 ib. 15; Carlisle v. Hill, 16 ib. 407; Clemens v. Loggins, 1 ib. 623; Browning & Co. v. Grady, 10 ib. 999; Boyd & Macon v. McIvor, 11 ib. 822.

2. In this action, both the plaintiffs must recover, or neither

can; and the right of either to recover may be defeated by proof of admissions, as well as in any other way. The second charge, therefore, was erroneous.—Cochran & Estill v. Cunningham's Executor, 16 Ala. 448 ; Hardeman v. Sims, 3 *ib.* 747.

3. The money sued for is the proceeds of the house and lot in Thomaston, which the plaintiffs failed to include in their schedule when they applied for the benefit of the insolvent debtors' act. The statutes of Georgia, which were read in evidence, show that the mere omission to include the property in the schedule is a violation of the law, which works a forfeiture of the omitted property,—one half to the informer, and the other half to the trustee or creditors. The plaintiffs' failure to include this property certainly affords no ground for their recovery of the money. They are attempting to practice a fraud on their creditors ; and the law will not interfere to help them, the contract being executed, and the parties *in pari delicto.*—Black v. Oliver, 1 Ala. 449; Boyd v. Barclay, *ib.* 36; Collins v. Blantern, 2 Wils. 347. The charge asked on this point, therefore, should have been given.

4. The plaintiffs' right of action (if any they have) accrued when the debt to Dyer was paid ; and no matter how many different changes the property may have passed through since that time, the statute of limitations begins to run from that date. The defendant was a resident of this State for many years, and there is no proof that he received the money under any other agreement than that made by him and Stamper when they assumed the Dyer debt. No other promise is shown, and Stamper's conclusions cannot be regarded.—Kavenagh v. Weedon, 1 Ala. 231; Johnson v. Johnson, 5 *ib.* 90 ; Wood v. Wood, 3 *ib.* 756; Maury v. Mason, 8 Porter, 211.

S. F. RICE, with whom was R. MITCHELL, *contra :*

1. Where one person receives a conveyance of any description of property, upon a verbal agreement that he will transfer or dispose of it, absolutely or conditionally, for the benefit of another, he is bound to perform his engagement. If he refuses to perform it, a court of equity will compel him to do so ; and if he performs it, and the execution of the trust creates a mere moneyed demand, and he receives a sum certain, the person for whom he received it may mantain an action for

its recovery, and the statute of frauds is no defence to the action.—Hitchcock v. Lukens, 8 Porter, 333; Sledge v. Clopton, 6 Ala. 600 ; Turner v. Eldridge, 11 *ib*. 1049 ; Cameron v. Clarke, *ib*. 259 ; Strickland v. Burns, 14 *ib*. 511; McLeod v. Powe & Smith, 12 *ib*. 9; 7 Barb. (S. C.) R. 63.

2. The recovery in this case is justified by the principle, that where one man has money in his hands, which *ex æquo et bono* belongs to another, the person entitled to the money may maintain assumpsit for it, if there is no contract modifying or controlling the general liability to pay.—Hitchcock v. Lukens, *supra.*

3. The defendant in this case, having received the money sued for, in 1844–5, for the plaintiffs, as proved by Stamper and others, will not be permitted to shelter himself from his liability to pay it over, by invoking the aid of the statute of frauds of Georgia, nor by the effort to avail himself of the proceedings under the insolvent laws of Georgia, nor by his appeal to the courts of Alabama to vindicate the public policy of Georgia, and to make the penal statutes and public policy of Georgia operative in Alabama as rules and elements of judicial decision. He is not in a fit condition to raise these questions, or to receive any benefit from them. He received the money for the plaintiffs below, and has no right to retain it. No person claims it, except the plaintiffs; and if he pays it to them, he is discharged, so far as it is concerned, from all liability to any other person. To permit him, under such circumstances, to retain it for his own use, would be a reproach to the courts of justice.—Upchurch v. Norsworthy, 15 Ala. 705 ; Hitchcock v. U. S. Bank, 7 *ib*. 386 ; Boyd v. Barclay, 1 *ib*. 34.

4. The statute of limitations, under the proof, could not commence running in the defendant's favor, until he received the money ; and this occurred within less than six years before the commencement of the suit. The payment of the original debt to Dyer would not, of itself, entitle the plaintiffs to maintain this action, unless the defendant had then received the money.

5. The property, from which the money now in controversy arose, was not included in the schedule filed by the plaintiffs when they applied for the benefit of the insolvent debtors'

act of Georgia. There is no outstanding title to this money in another, and the proceedings under the insolvent laws have nothing to do with the case. But, even if there was an outstanding title to the money in another, yet the defendant could not avail himself of it as a defence to the action, because he received the money for the plaintiffs; and as no one has given him notice of any claim upon it, and he is not in any way connected with the outstanding title, a payment by him to the plaintiffs would protect him from all liability to the owner of such outstanding title. He is the agent of the plaintiffs, as to this money, and received it as their agent; he is, therefore, estopped from setting up such defences, even if they were true in point of fact.—Crutchfield v. Wood, 16 Ala. 703; Johnson v. Goodridge, 15 Maine R. 29.

6. There was no error in charging upon the effect of Stamper's evidence, if believed by the jury. It is the right and duty of the court to put every phase of the case to the jury; otherwise, trial by jury, in many cases, would be a mockery. The defendant had the right, if he apprehended erroneous inferences on the part of the jury, to ask other instructions. Faires v. Lodane, 10 Ala. 50.

GOLDTHWAITE, J.—On the trial below, the evidence tended to establish the following facts: The plaintiffs, J. H. & B. S. Garrett, were indebted to one Dyer, by judgment, for upwards of two thousand dollars; and at their request, the defendant, John Garrett, and one Stamper, gave their notes to Dyer, endorsed by the plaintiffs, for the amount, and, to secure themselves, took control of the judgment, and received from the plaintiffs some sixteen hundred dollars in notes on other persons. It was agreed, by parol, between the parties, that Stamper and the defendant were to control the judgment and the notes, so as to secure themselves against the note given by them to Dyer; and if the plaintiffs paid this debt, they were to receive the benefit of the amount which was collected on the judgment and the notes received from them. Under this arrangement, an execution was issued upon the judgment, which was levied on a tract of land; and this land, Stamper, who was examined as a witness, swears, was bought by him at the sale, and the amount credited on the

execution. This tract, he also swears, was exchanged by him for another tract, which he sold, taking a note for the purchase money, and this note he turned over to the defendant, for the benefit of the plaintiffs; and he also swears, that he was informed by him that he had collected the money upon it.

The statute of frauds of Georgia, in which State the arrangement was made, was offered in evidence; and its terms are substantially the same with our own.

There was other testimony introduced, but it is unnecessary to state any portion of it in connection with the question presented by the first charge, which was, in effect, that the statute would be no defence, if the jury believed the facts stated by the witness Stamper, in relation to the purchase and sale of the land, the turning over of the note received by him for the purchase money to the defendant for the benefit of the plaintiffs, and the collection of the note by him.

It is supposed by the counsel for the plaintiff in error, that this charge was erroneous, for the reason, that it rested the case solely upon the testimony of the one witness referred to, instead of the whole evidence. But such is not its effect. There was nothing in the charge, which excluded, either expressly or impliedly, any of the other evidence in the cause; and had it been apprehended that any such inference could have been drawn from it, the defendant could have been protected by asking the necessary instructions from the court. It cannot be doubted, that the judge may instruct the jury as to the law in the different phases in which the case may be presented upon the evidence; and if the evidence of one witness tends to prove certain facts, there can be no error in declaring the law upon these facts; and this was all that was done in the charge referred to. The question of law which it involves, is simply as to the application of the statute of frauds to the facts as stated by the witness Stamper.

Upon the evidence of this witness, the defendant must be regarded as occupying the position of surety for the plaintiffs; and conceding that any agreement with them, not in writing, to buy lands under execution and pay the proceeds to them, upon a re-sale, would be within the statute, yet, if lands were actually bought under such an agreement, and re-sold, and the money paid to a third person for the benefit of

the party with whom the agreement was made, there could, we apprehend, be no question as to his right to recover it. It would be money had and received to his use. The case we have put, is identical, in principle, with the one before us, in the aspect in which we are considering it. If the contract was void as to the lands, by force of the statute, then Stamper was not bound by it. He had the right to make the purchase, and when made, it would enure to his own benefit. He considered, however, that as the plaintiffs had paid the debt on which he was their surety, they were entitled to the proceeds of the land, and accordingly turned over the note which he received on the re-sale to the defendant for the benefit of the plaintiffs. This he had a perfect right to do, and the defendant could not gainsay the appropriation.

What we have said disposes of the first and third charges.

The second charge, when taken in connection with the evidence, simply asserted the legal proposition, that admissions made by plaintiffs were not conclusive upon them, unless they were made under such circumstances as to amount to an estoppel *in pais*, which the testimony shows was not the case; and in that there was no error.

In relation to the charge which was predicated upon the insolvent laws of Georgia, and the failure of the defendants in error to insert in their schedule their interest in the proceeds of the land, it is only necessary to observe, that if the contract was void, they had no interest whatever in such proceeds. But, independently of this ground, it is to be remarked, that there is nothing in the laws referred to, as given in evidence upon the trial, which divests the insolvent of his ownership in the property omitted. He may be convicted of perjury for falsely taking the oath which the statute prescribes, or the property may be subjected to the satisfaction of his debts; but there is no principle upon which his debtor could take advantage of the fraudulent omission on his part to insert in his schedule the demand sued for, by way of defence to such action.

So, also, in relation to the charge which was requested, to the effect that the plaintiffs could not recover if the arrangement between them on the one part, and the defendant and Stamper on the other, was made in the year 1833, and the

debt to Dyer paid off more than six years before the commencement of the present action. If the plaintiffs were entitled to recover at all, it could only be upon the ground, that the defendant had received money to which they were entitled ; and the statute could not begin to run, until the cause of action accrued, which could not be until the money was received.

There was no error in overruling the answer of the witness Stamper to the tenth direct interrogatory, since, in no aspect in which it could be considered, did it involve the question of title to real estate. If, however, it was conceded that it did, as so much of the answer as states the understanding or agreement between the parties, and what disposition the witness made of the property, was admissible, the court was not bound to sustain an objection which went to the whole answer, only part of it being illegal.

As to the exception taken by the appellant to the admission of the answer of the witness Sturgiss to the second direct interrogatory : This answer disclosed that the plaintiffs below had been engaged as partners in Georgia, and had become liable to one Dyer upon a note which was in judgment ; that Dyer transferred the same to Stamper and John Garrett, in consideration of their note, endorsed by the plaintiffs ; and it was also in evidence, that Stamper bid off certain lands of the plaintiffs, at an execution sale on the judgment. The answer was objected to, solely on the ground that it tended to vary the terms of the sale, and the effect of the title of the witness Stamper ; and this, consequently, operated as a waiver of every other objection.—Creagh v. Savage, 9 Ala. 959. Under this rule, however objectionable the answer may have been in other respects, we are unable to perceive how it tended to change the effect of the sale under execution, and the purchase by Stamper ; the more especially as it was offered in connection with the law of Georgia, where the assignment was made, which recognized its validity, and authorized the collection of the judgment by the assignee. The same principle applies to the objections which were made to the other answers of this witness upon the same ground. There is nothing in any of them, which tends to vary the legal effect of the sale to Stamper. Conceding that the agreement be-

tween the plaintiffs on the one part, and Stamper and the defendant on the other, so far as the same relates to the purchase of lands under the execution, may have been within the statute of frauds; yet Stamper had the right to purchase, and to pay the money resulting from a re-sale of the lands to the plaintiffs; and if he paid it to the defendant, for their benefit, they could, as we have seen, recover it from him, and the statute of frauds would not prevent it.

What we have said in relation to the objections made to the testimony of the witness Sturgiss, applies equally to those which were made upon the same ground to the evidence of the other witness.

In relation to the motion to exclude the portion of the answer of Sturgiss to the fifth direct interrogatory, to the effect that the debt of Dyer had been paid, for the reason that it did not show that the payment was made before the commencement of the action,—there was no error, because the evidence of the witness Stamper tended to show that such was the case. Here were, then, two testifying as to the payment of the same debt,—one locating the payment at a period before the commencement of the suit, the other not locating it at all. As there was but one payment, the testimony referred to of the last witness must be regarded as corroborative of the evidence of the first as to the payment, and in this aspect it was properly admitted.

As to the objection taken to that portion of the answer of the witness Sturgiss to the fifth cross-interrogatory, which stated that the plaintiffs, at the time of filing their schedule, " did not include any of the assets turned over to indemnify the defendant and Stamper, and witness advised them that they had no right so to do,"—it is certain that the defendant had not the right to object to the first part of it, as it was in direct response to the question propounded by the objector; ' and a part being admissible, under the influence of the principle we have so frequently asserted, it was no error to overrule an objection which went to the whole.

We have gone through all the points made upon the record, and we have only to add that the judgment must be affirmed.

RICE, J., having been of counsel, not sitting.