# Louisville & Nashville R. R. Co. *v.* Perkins as Admr.

*Action for Damages for Forcible Ejectment from Moving Train, Resulting in Death.*

[DECIDED JUNE 30, 1905.]

1   *Action for Personal Injuries; Sufficiency of Averments.*—Where a passenger is "forcibly, willfully, wantonly, and intentionally" ejected from a moving train, whereby he sustains injuries, it is unnecessary to allege that the injury was wilfully, wantonly, or intentionally inflicted, or that the employes of defendant knew of the peril of the plaintiff's intestate at the time that the injury was received.

2.   *Witness; Credibility of; Charge to Jury as to.*—The mistake of a witness, in his testimony as to a collateral fact, is not sufficient to justify a charge to the jury to disregard his entire testimony.

3.   *Evidence; Charge to Jury; Undue Stress upon Particular Phase of Testimony.*—Where the witness testifies to the forcible ejection of plaintiff's intestate from a moving train by the conductor and other servants of defendant, a charge to the jury that they must find for defendant, unless they believe from the evidence that the conductor forcibly ejected plaintiff's intestate, is properly refused, because it limits the right of recovery to the wrongful act of the conductor alone.

4   *Same; Same.*—A charge to the jury, confining their attention to a signe phase of the testimony in making up their verdict, is properly refused.

5   *Same; Same.*—A charge to the jury that there is no evidence of a specifically designated fact, may be properly refused.

6.   *Evidence; Unreasonableness of Conduct of Witness as Affecting His Credibility.*—The unreasonable and inhuman conduct of a witness in failing to render aid to one injured in his presence, does not, of itself, authorize the rejection of his testimony as to the circumstances of the infliction of the injury.

7   *Witness; Credibility of as Affected by Partial Disbelief.*—The jury need not reject all of the testimony of a witness, though they may not believe it in all of its parts.

[Louisville & Nashville R. R. Co. v. Perkins as Admr.]

APPEAL from Butler Circuit Court.

Heard before Hon. J. C. RICHARDSON.

This action was brought by the appellee, W. L. Perkins, as the administrator of the estate of Isaac R. Dykes, deceased, and sought to recover from the defendant damages for personal injuries causing the death of plaintiff's intestate.

The complaint contained several counts, but, as the opinion takes notice of the averments of the sixth count only, it is unnecessary to set out any other. The sixth count of the complaint, as originally filed, was as follows: "The plaintiff claims of the defendant the further sum of fifty thousand dollars damages in this; that on to-wit, Jan. 3rd, 1903, defendant was engaged in operating a railroad in the State of Alabama, and running passenger trains thereon, and that plaintiff's intestate was on said train travelling from Mobile, Alabama, to Geneva, Alabama, and that the agents, servants or employes of defendant, whose names are unknown to plaintiff, and who were at the time acting in the scope of their employment, wrongfully, wilfully wantonly and intentionally ejected plaintiff's intestate from the train between the stations of Georgiana and Chapman, Alabama, thereby causing plaintiff's intestate personal injuries from which he died." Afterwards, the plaintiff amended said sixth count as follows: "By adding immediately after the word 'wrongfully' where it occurs in said count, the following words, 'wilfully, wantonly and intentionally,' and also, by striking out the word 'Geneva' where it occurs last in said count, and inserting in lieu thereof, the word 'Georgiana.'" To this count, demurrers were interposed and overruled.

On the trial, the uncontradicted evidence showed that, on the 3rd day of January, 1903, the plaintiff's intestate, Isaac R. Dykes, who was an old man more than seventy years of age, was a passenger on the train operated by the defendant running from the city of Mobile, to the city of Montgomery, Alabama. That he had a regular ticket, issued him by the defendant, entitling him to ride on such train from Mobile to Geneva, Alabama. That to take such trip, it was necessary for said Dykes to leave the train at Georgiana, and there take another

train operated by the defendant, which would carry him to Geneva. Such train made its regular run, without accident, and on schedule time. It stopped at Georgiana, according to schedule, and proceeded to Chapman, a station about three miles north of Georgiana, where it also stopped, according to schedule. It was shown that, on the morning of the next day between six and seven o'clock, said Dykes was found near the railroad track, about half or three quarters of a mile from Chapman, lying with the lower part of his body in a pool of water. That the night of the 3rd was cold enough for frost, if not frosty. That when found, the said Dykes was unconscious, or in a semi-conscious condition; that his feet and ankles were frozen, or frost-bitten. He died about two weeks thereafter, the immediate cause being pneumonia. When found as above stated, he was badly bruised about the face and legs. The train upon which he was a passenger passed that point about half past four or five o'clock on the evening of the 3rd day of January.

The plaintiff introduced the evidence of one E. M. Williams, taken on a former trial of this case, such witness being out of the state at the time of the present trial. Such evidence was to the effect that the witness was a workman at the Smith Lumber Company, at Chapman, his duties being to run a planing mill. That, at three o'clock on the evening of January 3rd, 1903, he left the company's shops, and went out to take a walk, as he expressed it, "For a pleasure trip." That about half past four or five o'clock, while walking along the road beside the railroad, he saw the train approaching from Georgiana towards Chapman. That, when the train passed, he saw three men on the rear platform, two of them being in the uniform prescribed by the defendant for its servants or agents, and the third was an old man, not in uniform. That the uniformed parties had the old man between them and expelled him from the car, which at that time had slowed up, and was running about ten miles an hour. The witness said that he did not look to see whether the old man fell, or rolled over, when expelled, but that witness paid no attention and continued his walk. That about nine o'clock the next morning, he saw the old man at the same place, others being then

present. He testified to injuries and condition. The old man was identified as the plaintiff's intestate. Witness said that he did not say anything to anyone at this time, of having seen the the old man ejected from the train, although he talked to several of the parties present, and assisted in moving him. This witness also testified that when he left the lumber mills at three o'clock, he engaged one Tom Ellis to work in his stead at the mills.

Two other witnesses were introduced by the plantiff to corroborate the witness, Williams. They swore to his absence from the mills after three o'clock in the evening of January 3rd. Also, that one George Ellis worked in his place that afternoon. When asked on cross examination if he did not swear that Tom Ellis worked in the place of Williams that afternoon, the witness said he did not, but that Tom and George Ellis were brothers, and that witness frequently called one brother by the name of the other.

The defendant introduced as witnesses each servant or employe who was on the train in question, and each swore that he had not put off, or assisted in putting off anyone at the place mentioned by Williams, and that, to the best of their knowledge, no one was put off at such time and place. That, on the evening in question, the train did not slow up at the place testified to by Williams.

Tom Ellis being introduced said that he had occasionally worked for the witness Williams at the Smith Lumber Company, but that he did not do so on the third of January, 1903; that, on that day, he was at work in the town of Brewton. George Ellis swore that he did not work for Williams on such day, but that he saw Williams near the commissary store of the lumber company, about three that afternoon. The pay rolls of the Smith Lumber Company for said date were given in evidence, and showed that said witness Williams was paid for a full day's work for such day.

The court refused charges requested in writing by the defendant, numbered and as follows: 1. "The Court charges the jury that if they believe the evidence, they will find for the defendant." 4. "The court charges the jury that if they believe from the evidence that Tom

Ellis did not work in the place of E. M. Williams on January 3rd, 1903, then they must find for the defendant." 8. "The court charges the jury that unless they believe from the evidence that plaintiff's intestate was thrown from the train by Cargill, the conductor, then their verdict must be for the defendant." 16. "The court charges the jury that there is no evidence in this case that the train was slowed up near Chapman by either conductor Cargill, or the flagman Hawkins." 21. "The court charges the jury that it being a matter of common knowledge that it is a natural instinct to render aid to persons discovered in a position of peril, and the witness Williams having testified that he failed to render aid to plaintiff's intestate put in a perilous position which happened within his sight, authorizes and requires the jury to reject his testimony entirely." A. "The court charges the jury that unless they believe the testimony of E. M. Williams, they must find for the defendant." B. "The court charges the jury that the fact that plaintiff's intestate Dykes, was found near the track of defendant is not any evidence of his willful, wanton or intentional injury by employes of the defendant, and unless the jury also believe the testimony of Williams, then they must find for the defendant."

There was verdict and judgment for the plaintiff, from which the defendant takes this appeal.

CHARLES P. JONES and J. M. CHILTON, for appellant.

KIMBROUGH & WILSON, POWELL & HAMILTON and MC-ALPINE & ROBINSON, for appellee.

ANDERSON, J.—The 6th count charges the wrongful ejection of plaintiff's intestate from a moving train while on an embankment and avers his consequent injury and death, and is a good count for the wrongful ejection, which is the foundation of the action. And, as the count does not charge the defendant with inflicting the injury, it was not necessary to aver a consciousness of the result of said wrongful ejection. The demurrer proceeds upon the theory that the count avers the wanton and willful infliction of the injury, and is inapt, as

the count relies on the wrongful ejection of plaintiff's intestate. The demurrer was properly overruled. *Lampkin v. L. & N. R. R. Co.*, 106 Ala. 287.

The trial court did not err in refusing charge 1, which was the general affirmative charge for the defendant, and which said charge was so thoroughly unwarranted by the evidence that comments are unnecessary.

Charge 4 was properly refused. It is true the witness, Williams, testified that Tom Ellis was working in his place the afternoon he was off, and when he claimed to have seen the old man ejected from the train. But there was other evidence that Williams did not work at the mill that afternoon and that the planer was run by George Ellis, a brother, instead of Tom. The witness could have been mistaken as to which of the Ellis boys was working for him, and the jury could have easily believed that Williams did not work at the mill that afternoon and that George, instead of Tom, took his place.

Charge 8 was properly refused. If not otherwise faulty, it required the jury to find for the defendant, unless Cargill the conductor threw the intestate off the train. There was nothing in the evidence to show that the ejection was by the conductor alone.

Charge 16 was properly refused.

Charge 21 was properly refused. If faulty for no other reason, the failure of the witness to render aid or assistance to the old man did not authorize and require the jury to reject his testimony entirely.

Charge A was properly refused. It called upon the court to single out the testimony of Williams, and confined the jury to a consideration of a part of the testimony, when, in making up a verdict, they should consider it all together.—*L. & N. R. Co. v. Rice*, 101 Ala. 676; *Ross v. Ross*, 20 Ala. 105; *Ralston v. Langdon*, 26 Ala. 664; 11 Ency. Pl. & Pr., § 4, p. 141; *Cook v. Thompson*, 109 Ala. 523; *Miller v. State*, 110 Ala. 87; *Murphy v. State*, 108 Ala. 13; Blashfield on Instructions to Juries, p. 558.

This charge practically required the jury to believe all of the evidence of Williams in order to find for the plaintiff, when as a fact they could have disbelieved some parts of his testimony and believed other parts,

and it was not necessary to have believed all of his evidence in order to have found a verdict for the plaintiff. The cases relied upon by counsel for appellant, *Hart v. Bray*, 50 Ala. 446 and *Garrett v. Garrett*, 27 Ala. 687, are not authorities that would put the trial court in error for refusing to give this charge. They simply hold that the trial court will not be reversed for giving a similar charge, when the evidence of the witness aimed at determines the merits of the case. They do not hold that it would be reversible error to refuse such a charge, but rather excuses the judge for giving it.

Charge B was also properly refused.

It is true that the witness Williams was contradicted by the trainmen, the parties charged with committing the deed, and the act of throwing the old man off the train seems so inhuman and cruel as to be unreasonable, yet unreasonable things are often done and crimes frequently committed; the courts are not authorized to disturb the finding of a jury because the act was inhuman and because the defendant's witnesses outnumbered the plaintiff's. The old man was found disabled near the track, some distance beyond his destination on that line, and it is just as reasonable to believe that the train was slowed up and he was put off when the conductor in going through discovered that he had been carried beyond Georgiana, as it is to believe that he jumped or fell off the train or that he wandered up the track after getting off at Georgiana and got in the water of his own accord, especially in view of the fact that there was not the slightest evidence to show that he got off or was put off the train at Georgiana, notwithstanding the train arrived there in broad daylight. The record discloses the fact that the evidence was considered twice by separate juries and each time there was a verdict for the plaintiff, and this court does not feel authorized to pronounce the finding so contrary to the evidence as to render the verdict wrong or unjust.

There was no error committed by the trial court of which the defendant can complain.

Affirmed.

McClellan, C. J., Tyson and Simpson, JJ., concurring.

### RE-HEARING.

ANDERSON, J.—Upon a re-consideration of the evidence, the court is of the opinion that the trial judge should have granted the defendant's motion for a new trial, upon the ground that the verdict was contrary to the great weight of evidence, and for this reason the rehearing is granted, the judgment is reversed and the cause is remanded.

McCLELLAN, C. J., TYSON and SIMPSON, JJ., concurring.