THE STATE v. TURNER, *Appellant.*

Division Two, May 31, 1892.

1. **Criminal Practice**: EVIDENCE: VERDICT. The identification of the defendant, as the person who committed the crime for which he is indicted, is a question of fact, and the supreme court will not disturb the finding of the jury thereon, where the instructions are proper and there is substantial evidence to support the verdict.

2. ———: INSTRUCTIONS. Instructions on the weight to be given to the testimony of a defendant in a criminal case testifying in his own behalf and as to the effect of his admissions, and on reasonable doubt, approved.

3. ———: DEFENDANT AS A WITNESS: CROSS-EXAMINATION. The action of the trial court in permitting a defendant testifying in his own behalf to be cross-examined on matters not referred to in the examination in chief will not be reviewed unless objections were made and exceptions were saved at the time.

4. ———: ———: ———. An objection after defendant's cross-examination for some time "to all this as being incompetent and irrelevant, and not proper cross-examination upon the evidence in chief," *held* sufficiently specific.

*Appeal from St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*Z. J. Mitchell* for appellant.

*John M. Wood,* Attorney General, for the State.

MACFARLANE, J.—Defendant was indicted, tried and convicted in the circuit court of St. Louis county of burglary and larceny in a dwelling-house. The sentence was for confinement in the penitentiary for twelve years.

Upon the trial a burglary of the dwelling-house of John Wishart, and the larceny therefrom of $7 or $8 in money, and a few small articles of property, were shown beyond question; indeed, they were indisputed. The issue turned upon the question whether these offenses were committed by the defendant.

The testimony showed that John Wishart lived in the town of Kirkwood, in St. Louis county, his dwelling consisting of two stories. Defendant lived in the same town, had worked for Wishart three years, and was well known to himself and wife. He had only worked for Wishart occasionally since his residence in this particular house, but was familiar with the premises. On the morning of July 22, 1891, about dawn, Mrs. Wishart was awakened by a noise in the room, and raising up in the bed she discovered a man in her room on his knees trying to unlock a drawer of her dressing case. When the man found himself detected, he arose and slipped out at the door of the room. This room was in the second story of the house and fronted east. Mrs. Wishart waked her husband, telling him there was a man in the house, giving no name. Her husband arose and went to the back window of the house and fired his pistol for the purpose, as he said, of waking the hired man. Mrs. Wishart, as she testified, went to the front window, and on looking out saw two men going out through the front lawn. She called to her husband, and about the same

moment one of the men turned and fired a pistol, the ball passing through the window and into the ceiling. Two or three additional shots were fired at and through the window.    Mr. Wishart went to this window, raised it and fired at the men.    On the trial, Mr. Wishart testified that when he fired at the men through the window he recognized defendant as the one doing the shooting, and Mrs. Wishart testified that she recognized defendant while in the room, and afterwards while on the lawn.    They were both positive in their identification, though the wife admitted that she did not inform her husband that she recognized defendant until breakfast, some two hours after the burglary, but he was absent from the house most of that time.    After the men had escaped Mr. Wishart, in company with the marshal, and two neighbors, undertook to follow these men, and did so for a half to three-quarters of a mile to the railroad.    He did not inform these parties that defendant was one of the burglars until they got to the railroad. Some of them then went to defendant's yard fence; they made no arrests at that time, nor does it appear that inquiries were made as to whether defendant was in.

Defendant offered several witnesses who testified that after hearing the pistol shots they saw two men running from the direction of Wishart's; that they knew defendant, and he was neither of these men. Testimony was also offered tending to prove that defendant had not been from home that morning. Several witnesses also testified to defendant's previous good character.

The general instructions given by the court on its own motion were full, fair, and covered every phase of the case, and no objections are raised to them. The following instructions asked by the state and given by the court are objected to by defendant:    "1.    The court further instructs the jury that the defendant

Turner is competent to testify as a witness in the case against him, but it is proper for you to recollect that the fact of his being the person on trial, and testifying in defense of himself, may be considered for the purpose of determining his credibility as such witness, and, further, that in considering what the defendant has said concerning the matter charged against him, after it was done, you should consider it altogether.

"He is entitled to the benefit of what he so said for himself, tending to prove his innocence, if true, and the state the benefit of what he has so said against himself, tending to prove him guilty, in any statement of his proved by the state.

"What he has so said against himself the law presumes to be true, because it is an admission against his own interests in the case; but what he so said for himself the jury are not bound to believe, because said for the purpose of his own interests, to prove his innocence, and in a conversation proven by the state.

"2. The court further declares the law to be, that in instructing you to believe beyond a reasonable doubt it is not meant that you must be absolutely certain beyond all doubt whatsoever; but that if you should have some doubt of the defendant's guilt of the crime charged against him, and that such doubt is a substantial one, arising from the evidence, or want of evidence in the case, and not a mere possibility of his innocence, then you should find him not guilty; and, if you have no such reasonable doubt upon the evidence, you should find him guilty."

I. The first objection urged by defendant is that the evidence connecting defendant with the commission of the crime is so indefinite and founded upon so many doubts as to be insufficient to sustain the verdict of guilty found by the jury. The objection, of course, goes to the sufficiency of the identification of the

defendant as the one seen in the house, and afterwards on the lawn in front of the house.

We do not think there is any substantial merit in this objection. Mr. and Mrs. Wishart both unequivocally testified that they knew and recognized defendant as one of the burglars. The fact that neither of these witnesses at the time informed the other that defendant was recognized as the guilty one would merely go to the credit to be given to their testimony by the jury, and as a circumstance throwing doubt upon the guilt of defendant. This was a question of fact, and was submitted to the jury under exceptionally fair and liberal instructions. The jury and trial judge had opportunities for testing the credibility of the witnesses who testified, and the weight to be given their evidence, which we have not, and this court will not disturb the verdict in questions of fact, when there is substantial evidence, as in this case, to support it. *State v. Hicks*, 92 Mo. 433.

II. Objections are made to instructions 1 and 2 given on request of the state. The question of instructing the jury on the weight to be given the testimony of a defendant who testifies in his own behalf in a criminal case, and to the evidence of his declarations and admissions in conversations with others, has been frequently passed upon by this court. Instruction 2 embodies substantially the rules which have been approved and instructions which have been sanctioned. *State v. Talbot*, 73 Mo. 347; *State v. Curtis*, 70 Mo. 594; *State v. Peak*, 85 Mo. 192; *State v. Brooks*, 99 Mo. 142; *State v. Young*, 105 Mo. 634.

III. The second instruction informs the jury of what is required to constitute such a reasonable doubt of guilt as would demand an acquittal. This instruction is also substantially the same as have received the approval of this court in numerous cases. *State v.*

*Vansant,* 80 Mo. 73; *State v. Gonce,* 79 Mo. 602; *State v. Evans,* 55 Mo. 460.

Each of these instructions may be open to verbal criticism, but we are not able to see that anything contained in either could have been prejudicial to defendant. It may be properly suggested here that it is the safer practice for attorneys not to undertake to enlarge upon or improve approved forms and precedents.

IV. The next objection urged by defendant for the reversal of the judgment is that the prosecuting attorney was permitted to cross-examine defendant, while testifying as a witness in his own behalf, in regard to matters about which he was not examined in chief. Section 4218, which makes a defendant in a criminal prosecution a competent witness to testify in his own behalf, also makes him liable to cross-examination "as to any matter referred to in his examination in chief." This provision has been held to confine the cross-examination to such matters, but it has also been held that unless objection be made and exception saved to cross-examination in regard to matters not called out in his examination in chief, the same would be waived. *State v. McDonald,* 85 Mo. 539; *State v. Mills,* 88 Mo. 417.

It is virtually conceded that the cross-examination of defendant went beyond what was authorized under the statute; indeed, the examination was quite lengthy, and went into many matters not touched upon in the examination in chief. Throughout this entire cross-examination only one objection is found to have been made or exception saved, and to that we must confine our consideration.

Defendant testified in substance that he had gone home and to bed at ten o'clock the night before the burglary; that he slept in the bed with a sick son, and did not get up until after the hour of the burglary next morning. With that basis the prosecuting attorney

inquired particularly in regard to who was in the house, who had access to the rooms, how they were fastened, etc., and proceeded as follows: "Did you tell me in the presence of Shaw and Jacoby that nobody else was in the room next morning? *A.* I never told you anything about that.

"*Q.* Did you ever say the boy was in a deep sleep and was snoring? *A.* No, sir.

"*Q.* You never said anything of this kind in the presence of Jacoby and myself?"

Here counsel for defendant objected "to all this as being incompetent and irrelevant, and not proper cross-examination upon the evidence in chief." This objection was overruled, and an exception duly saved. The prosecuting attorney proceeded on the same line of examination without further specific objection, though an answer was not required to the question to which the objection was made.

It is, after much consideration and doubt, that we conclude that this improper cross-examination should have been stopped upon this objection. We are not able to say that the matters called out were not prejudicial to defendant. No one can read the record in this case without being impressed with the fact that the evidence was very close, and that the scale might have been turned by very slight circumstances. Persistent and ineffectual objections to the same character of testimony would in themselves have had a tendency to create a prejudice against defendant as indicating that he feared a full investigation. The questions put to the witness did not call for disclosures which could have been in themselves prejudicial.

That the boy snored, if such was the fact, was not a matter which the jury could, in any manner, connect with the crime then under investigation to the prejudice of the defendant. The vice did not consist so

much in the matter to be elicited by this examination as in an implied contradiction and conflict between the witness on one side and the prosecuting attorney, Shaw and Jacoby on the other.

Any circumstance affecting the character and credibility of defendant may have been the grain that turned the scale against him. The law makes it our duty to examine the record of criminal trials, and to see that the forms of the law are observed, and that no errors were committed prejudicial to the accused.

The crime charged, that of breaking into a dwelling-house while the inmates were unconscious in sleep is and has ever been rightly regarded as one of the most heinous known of the law; but, instead of that being a reason for loosening the rules of law in the trial of one so accused, it is the more reason for seeing that none but the guilty are punished, and to that end that he have, in his defense, every safeguard the law has thrown around him.

We think the circuit court erred in permitting the cross-examination after the objection of the defendant thereto. Judgment reversed and cause remanded.