OREGON R. R. & NAV. CO. et al. v. BALFOUR et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1898.)

No. 435.

1. ADMIRALTY—SUIT BY SHIPOWNER TO LIMIT LIABILITY—POWERS OF COURT.
The powers of an admiralty court in proceedings instituted by shipowners, under Rev. St. §§ 4283, 4284, to limit their liability, are as extensive, and its remedies are as effective, as are those of a court of chancery, where its jurisdiction is invoked in an equitable proceeding.

2. SAME—FAILURE TO SURRENDER VESSEL LIABLE—POWER OF COURT TO SEIZE.
Where shipowners have invoked the jurisdiction of a court of admiralty by a petition to limit their liability, under Rev. St. §§ 4283, 4284, and, having thereby secured the stay of proceedings by libelants, surrender but one of two vessels held by the court to be liable, the court, having full equitable powers to adjust the rights of all parties interested, is not bound to dismiss the proceedings for that reason, but may by its own process, or its own order, seize the other vessel, and make distribution of the entire fund which it was the duty of the petitioners to tender by their petition; and such is the proper, and only equitable, course, where, by reason of the proceedings, suits by libelants have been delayed for a number of years, during which the shipowners have become insolvent.

3. SAME—MANNER OF SEIZURE.
It is not material in such case, where the vessel has been brought into court, and her owner has stipulated to pay her appraised value, whether or not she was brought in by the appropriate process.

4. CORPORATIONS—REORGANIZATION—NEW CORPORATION AS PURCHASER WITHOUT NOTICE.
A reorganized corporation, having the same officers and attorneys as the old, and succeeding to its property by purchase at a receiver's sale, is not a purchaser of such property without notice of the rights therein of parties to pending litigation between them and the old corporation involving the right to a lien on such property, and cannot relitigate in such suit questions which have been adjudicated as against the old corporation.

5. ADMIRALTY—SUIT TO LIMIT LIABILITY—DISTRIBUTION OF FUND.
Where, in proceedings on the petition of shipowners to limit their liability to libelants of a vessel, their petition is granted, and the fund in court is insufficient to pay in full the amount found due to one defendant, the petitioners cannot complain that a portion of it is erroneously distributed to other claimants.

6. RES JUDICATA—QUESTIONS NOT RAISED ON FORMER APPEAL.
In a suit by shipowners, under the statute, to limit their liability to certain libelants of vessels, the court adjudicated the claims of the defendants, and distributed between them the fund in court. An appeal was taken by the defendants, and the decree was reversed, on the ground

that the petitioners had not surrendered all the property liable; but on such appeal no question was raised as to the validity of the claims allowed to the several defendants, nor was such question raised by new pleadings after the case was remanded. *Held* that, as between the defendants, the validity of the claim of each was res judicata, and could not be questioned by any of the other defendants on a subsequent appeal.

Appeal from the Circuit Court of the United States for the District of Oregon.

C. E. S. Wood, for Balfour, Guthrie & Co.

W. W. Cotton, for Oregon R. R. & Nav. Co., Oregon Ry. & Nav. Co., and Oregon Short Line & U. N. Ry. Co.

Andros & Frank, for Malvina Short and Sven Anderson.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. This is the second appeal of this case. In October, 1892, the steam towboat Ocklahama had the barge Columbia in tow at a wharf in Astoria, Or. There was a collision against the wharf, and the barge sank, damaging wheat belonging to Balfour, Guthrie & Co., valued at $18,000, and killing Marshal Short, the captain, and John August Petersen, a deck hand, of the Ocklahama. The barge and the towboat were the property of the Oregon Railway & Navigation Company, but were leased, with the other property of said company, to the Oregon Short Line & Utah Northern Railway Company for a term of 99 years. Balfour, Guthrie & Co. instituted a libel in personam against the corporations to recover for their loss, and the representatives of Short and Petersen were about to bring suits to recover for the death of their intestates. The two corporations then joined in a petition in the admiralty court to limit their liability, under the provisions of sections 4283 and 4284 of the Revised Statutes, and prayed for an injunction against all proceedings against them or said vessels. At the same time the petitioners surrendered the appraised value of the barge Columbia, in the sum of $100, and sought by their petition to limit their liability to that amount. The court so decreed, but on appeal to this court it was held that the petitioners should have surrendered the towboat Ocklahama, and that, so far as the liability was concerned, the tug and the tow constituted but one vessel. 19 C. C. A. 436, 73 Fed. 226. A mandate was issued from this court, directing further proceedings in the court below in accordance with the said ruling. At the time of the collision, and at the time of instituting the proceeding to limit their liability, both corporations were solvent; but by the time when the mandate from this court was entered in the circuit court they had both become insolvent, and had gone into the hands of receivers. Application was made to the district court, on behalf of Balfour, Guthrie & Co., for an order directing that the receiver of the Oregon Railway & Navigation Company be made a party to the proceedings; but the court denied the order, and declined to allow the receiver to be made a party, or to declare him a trustee, under section 4285 of the statutes creating limitation of liability. The court ordered, however, that Balfour, Guthrie & Co. have leave to seize the Ocklahama. Applica-

tion was then made to the court for leave to issue an order of seizure, in the nature of an order of sequestration, to bring the Ocklahama into court. This order was denied, the court holding that no par- ticular order was necessary to warrant the marshal to seize the vessel. The Ocklahama was then seized under the regular process of the court. She was appraised at $8,600, for which sum the Oregon Railroad & Navigation Company, the successor in interest of the Oregon Railway & Navigation Company, gave a bond, and obtained possession of the vessel. The Oregon Railroad & Navigation Company then made ap- plication to be allowed to appear and contest the question of the lia- bility of said vessels for the injury; contending that it was a bona fide purchaser of the Ocklahama from the railway company, and that it had never had its day in court, and that the question of the liability of said vessels for the injury was still open to adjudication. The court denied this application, proceeded to adjudge the injuries to the appellees in this case, fixed the same at the total sum of $24,- 018.79, and ordered the application of the fund in court to the pay- ment, pro rata, of said claims. On appeal to this court the appel- lants the Oregon Railway & Navigation Company and the Oregon Rail- road & Navigation Company now contend: First, that the district court had no power, under the mandate of this court, to enter any de- cree imposing any liability upon the Oregon Railroad & Navigation Company or the steamer Ocklahama, and that the decree appealed from is not in accordance with the opinion of this court; second, that under the mandate of this court the district court was without authority to issue process against the Ocklahama, or to cause her seizure; third, that the district court erred in seizing said vessel, for the reason that no libel in rem had been filed against her; fourth, that the court erred in seizing said vessel, and in entering the decree appealed from, for the reason that the suit was commenced to limit the personal lia- bility of the Oregon Railway & Navigation Company and the Oregon Short Line & Utah Northern Railway Company, and was a suit in personam, and that by the seizure of the vessel it has been changed to a suit in rem, which is contrary to the admiralty rules; fifth, that if the petitioners in the suit to limit liability were not entitled to the relief they prayed for, by virtue of having surrendered the barge Columbia, then it was the duty of the district court, under the man- date of this court, to have dismissed the proceeding, and to have per- mitted the appellees to adopt such remedies as they might have deemed proper against both or either of said corporations, or to have confined the relief granted to said appellees to personal decrees and judgments against said two corporations, or either thereof; sixth, that the court erred in not permitting the Oregon Railroad & Navigation Company to defend, and in refusing to permit it to introduce evidence, and in depriving it as claimant of the Ocklahama without a trial; seventh, that the court erred in decreeing that the appellees in this case had any interest in the Ocklahama superior to the right of the said Oregon Railroad & Navigation Company, acquired by purchasing the steamer at the foreclosure of the mortgage made by the Oregon Railway & Navigation Company to the Farmers' Loan & Trust Company; eighth, that the court erred in finding that Malvina Short and Sven Anderson

should recover any sum whatever, since it appears from the evidence and the findings of fact that the injuries which their intestates received were the result of their own negligence, or that of their fellow servants; ninth, that the court erred in making any decree against the Ocklahama or her present owner, for the reason that there is no evidence that the towage services which she rendered were not fully performed and completed at the time when the injury occurred. Balfour, Guthrie & Co. appeal from that portion of the decree which awards a portion of the fund in court to the representatives of Short and Petersen; contending that the said Short and Petersen came to their death through the negligence of Ferguson, the master of the barge, who was their fellow servant.

In considering these questions it becomes necessary to refer to the nature of the proceeding to limit liability which is contemplated by the statute. The statute provides for "appropriate proceedings in any court." It has been held that inasmuch as congress did not invest the circuit courts of the United States with jurisdiction of such cases by a bill in equity, and the state courts have not the requisite jurisdiction, the district courts of the United States, since they have admiralty jurisdiction, are best adapted to distribute the precise relief which the statute provides for. Norwich Co. v. Wright, 13 Wall. 104. In Re Morrison, 147 U. S. 14, 13 Sup. Ct. 246, it was held that "the proceeding to limit liability is not an action against the vessel and her freight, except when they are surrendered to a trustee, but is an equitable action." In Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 3 Sup. Ct. 379, 617, it was said that the object and scheme of the statute are to prevent a multiplicity of suits. The proceeding, therefore, is a suit in equity, in admiralty, not to subject property to liens, nor to obtain a personal decree against the owners of the property, but to administer the property which has been invested in the venture through which the injury has occurred; and upon which admiralty liens may have attached therefor, and to apportion it among those who might, on account of the injury, have enforced admiralty liens against the property, or have obtained personal judgments against its owner. To accomplish these results, and to avoid the dilemma of inferring that congress has passed a law which is incapable of execution, it must be held that the powers of the admiralty in such equitable proceeding are as extensive, and its remedies are as effective, as are the powers and remedies of a court of chancery, where its jurisdiction is invoked in an equitable proceeding. In Norwich Co. v. Wright, above cited, it was said:

"If the shipowner desires the intervention of the court, it will not be sufficient for him simply to ask for a pro rata reduction of the libelants' damages, without in some manner tendering the corresponding pro rata compensation to which other parties, whose claims he sets up against the libelants, are entitled. Otherwise he might reduce the libelants' claim without ever being obliged to respond to the other parties."

Here was announced a principle of equity which by the former decision of this court (19 C. C. A. 436, 73 Fed. 226) was applied to the present case. We there held that the owners and lessees of the Ocklahama and the Columbia could not limit their liability by

simply surrendering one of the offending vessels, but were required to surrender both, and the cause was remanded for further proceedings in accordance with that view. It is not necessary here to reconsider any of the questions determined on the former appeal. It was held that the court could not proceed without the possession of the fund to which the liability was limited. The cause being remanded for that purpose, what were the necessary steps to be taken? Was the petition to be dismissed, unless the petitioners should, of their own motion, surrender the Ocklahama, or was it proper for the court to retain jurisdiction of the case, since its jurisdiction had once been invoked by the petitioners, and to obtain, by its own process, or upon its own order, the possession of the vessel, which should have been surrendered in the first instance, and which the petitioners still declined to surrender? We have no doubt that the latter proceeding was the proper one. The jurisdiction of the district court, in admiralty, in this equitable proceeding, had been invoked for the purpose of limiting the liability of the petitioners and adjusting all claims. As the result of filing the petition, all proceedings against the vessels and their owners were stayed. The petitioners voluntarily submitted themselves to the jurisdiction of the court, and asked the court to pass upon the question of their limited liability. They set forth the facts out of which that liability arose. They mentioned and described the Ocklahama and her connection with the accident. It is true, they denied that she was liable for the injury; but issue was taken upon this allegation by the appellees Balfour, Guthrie & Co. They alleged that the Ocklahama was liable, and asked the court to bring her in. The court proceeded to adjudge the damages, and to apportion to the payment thereof the small fund which represented the value of the Columbia. When the case went back on the mandate from this court, the Ocklahama was in the possession of the receiver. The appellees applied to the court for an order to make the receiver a party to the suit. This was denied, the court ruling that the receiver was not a necessary party. The petitioners did not ask the court to dismiss the suit or to dissolve the injunction. They were still before the court with their petition, and praying for the relief which the petition asked for. The appellees were in court with their answers, setting up their claims and demanding judgments therefor, denying the right of the petitioners to limit their liability to the barge, and demanding the surrender of the Ocklahama. It would be paying but little regard to the statute, and the decisions which have interpreted it, to say that in this equitable proceeding the court shall not have the power to require the petitioners to do equity. Said Mr. Justice Bradley in The Benefactor, 103 U. S. 239, "The flexibility of admiralty proceedings will enable the court, in most cases, to shape their course so as to attain justice between the parties." But for the interference of the court in the equitable proceeding, the appellees in this case would have had their recourse against both the vessels and their owners, and might long since have enforced their claims to the full extent of the damages which they sustained. By appealing to the equitable jurisdiction granted

to the admiralty court, the petitioners have procured a stay of such proceedings. A long period of time has elapsed. The appellees have not now the facility that they then had to produce evidence of the facts. The petitioners have become insolvent. Their assets have been sold upon foreclosure of mortgages. They have nothing now wherewith to meet the demands arising out of the accident. Such an interpretation of the statute renders it nugatory, and deprives the court of the jurisdiction which it was evidently the intention of congress to bestow upon it. Nor is it important here to determine whether, upon the refusal of the petitioners to surrender her, the district court could rightfully obtain jurisdiction of the Ocklahama by virtue of its process, or whether the vessel should have been brought into court by an order of sequestration, or by other means. The fact remains that the Ocklahama was brought into court; that her owner appeared and stipulated to pay her appraised value; that thereby the fund which the court was called upon by the petitioners to administer, in case it should limit their liability, was placed in the possession of the court. The method by which it was obtained, inasmuch as it does not involve any substantial right of the appellants, it is not necessary for the court now to review.

It is insisted that the Oregon Railroad & Navigation Company, the present owner of the Ocklahama, has not had its day in court, and that it is an innocent purchaser of the vessel, and took her upon foreclosure of a mortgage against the property of the Oregon Railway & Navigation Company, without notice of any admiralty lien affecting her. The Oregon Railroad & Navigation Company is the Oregon Railway & Navigation Company reorganized, with its name changed from a "way" to a "road." It has the same property, does business at the same places, is conducted by the same officers, and is represented by the same attorneys. The attorneys who are now before the court on behalf of the appellants were the attorneys for the petitioners at the commencement of the proceeding, and were subsequently the attorneys for the receiver of the Oregon Railway & Navigation Company. Notice to a corporation can only be effected by notice to its officers and agents, and it is absurd to say that the reorganized corporation is a purchaser without notice. It had notice of the accident out of which the present litigation arose, of the participation of the Ocklahama therein, of the lien with which she was chargeable therefor in admiralty, and of the proceedings which were brought to limit that liability. When the Oregon Railroad & Navigation Company appeared in the district court in the proceedings subsequent to the mandate from this court, it attempted to litigate a matter which was already adjudicated, to which its predecessor in interest had been a party, and by which it, as successor, was bound. It acquired the Ocklahama subject to the admiralty lien which had attached to it.

The question whether or not Short and Anderson are barred of all right to recover damages for the death of their intestates by reason of the fact that the accident occurred through the negligence of a fellow servant is one that does not affect the substantial rights of the railroad companies. The total amount of the fund in court is

insufficient to meet the damages which the court has found were sustained by Balfour, Guthrie & Co. If there was error in awarding a portion of it to Short and Anderson, the amount awarded to them should have been paid to Balfour, Guthrie & Co. The dispotion of the fund is a matter which does not concern the other parties to the suit. On the first appeal to this court, Balfour, Guthrie & Co., while appealing from the decree, did not appeal from, and sought in no manner to attack, that portion thereof which awarded damages to Short and Anderson. No suggestion was made in the pleadings before the original decree that Short and Anderson were not entitled to recover by reason of the fact that Ferguson, whose negligence caused the accident, was the fellow servant of their intestates. In the proceedings upon the mandate, Balfour, Guthrie & Co. did not file supplemental pleadings making such a defense, nor did they ask leave to do so. After the mandate, no further evidence was taken. Balfour, Guthrie & Co. now appeal, not from the action of the court in fixing the amount which Short and Anderson are to receive, but from the finding that they are entitled to recover in any sum whatever. That question has been adjudicated by the former decree, and we think the question of the right of Short and Anderson to participate in the fund is not now open for consideration. The Lady Pike, 96 U. S. 461; Supervisors v. Kennicott, 94 U. S. 498; Sibbald v. U. S., 12 Pet. 488; The Santa Maria, 10 Wheat. 431; Roberts v. Cooper, 20 How. 467. We find no error for which the decree should be reversed. It will therefore be affirmed, with costs to the appellees.