PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. PEDRO MORALES GONZÁLEZ, Defendant and Appellant.

No. 3607. Argued December 18, 1928.—Decided January 22, 1929.

L. *Mercader*, H. *Miranda* and R. *Martínez Nadal* for the appellant.
*José E. Figueras* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

The dead body of Graciano Guzmán, fifteen years of age, was found with a bullet wound in the forehead about eight o'clock at night on March 13, 1927, near Jobo brook on the farm of which Pedro Morales González is joint owner and manager situated in Jobo ward of Utuado. Pedro Morales González was charged by the district attorney with the murder of the boy and convicted by a jury of murder in the second degree. He was sentenced by the District Court of Arecibo to the penitentiary and took this appeal from that judgment.

According to the oral evidence for the prosecution Graciano Guzmán and his brother Timoteo Guzmán left their home on that day at about five o'clock in the afternoon to go to cut some grass on a farm of Manuel Maldonado and before reaching it Graciano left Timoteo on the road while he went to Jobo brook to wash some grape-juice bottles. While he was washing the bottles the accused appeared accompanied by his farm hand Jorge González and fired a pistol at Graciano. Then he said to him, "raise your head, you damned fool," and when Graciano looked up he fired another shot which struck Graciano on the forehead. Graciano fell to the ground and the other boy, Timoteo, ran away.

The accused testified that he was accustomed to go around the farm and fire shots to frighten the thieves and that on

that day he fired two shots, but denied that he had fired them at Graciano Guzmán.

Such is the substance of the evidence of both parties as regards the firing of the shots.

At the trial the court did not allow Timoteo. Guzmán, brother of the deceased and a witness for the prosecution, to answer the question of counsel for the accused as to whether his father, Vicente Guzmán, had brought an action for damages against Pedro Morales González for the death of Graciano. A similar question put by the same attorney to Vicente Guzmán, who was called as a witness for the accused, was ruled out also. Likewise the record of that suit was not admitted in evidence. Those three rulings are assigned as errors in the first, fifth and sixth assignments, the appellant contending that that evidence should have been admitted because it tended to show the interest which in this matter witnesses Timoteo Guzmán and his father, Vicente Guzmán, had against the accused.

The trial court did not commit the error assigned in refusing to admit that evidence, because the boy Timoteo was not a party to that action and had no direct interest therein. As regards the father, who was called as a witness for the defense, he not only said nothing against the accused, but his credibility could not be impeached by the party who called him. Nor was the record of the action brought against the accused admissible, because the bringing of a civil action is not in itself sufficient to discredit the veracity of the party plaintiff, for he can testify as a witness even in that action.

The second and seventh assignments may be considered jointly as they refer to occurrences prior to the commission of the acts on which the action was based, inasmuch as the former refers to the refusal of the trial court to allow witness Jorge González to testify as to whether on former occasions the accused had fired shots on his farm, and the latter to the refusal to allow that witness to testify to facts which

had occurred on the farm prior to the acts under investigation in this case.

By those questions the accused sought to show that he was accustomed to go around his farm and fire shots to frighten trespassers, and that evidence was irrelevant because the only matter to be investigated was that referring to the day on which Graciano was killed, particularly as it appears from the evidence for the prosecution that the accused aimed the two shots at Graciano Guzmán, ordering him before the second shot to raise his head and wounding him in the forehead. Moreover, although those questions were not allowed, the accused testified at the trial about these matters.

The third assignment of error refers to the refusal to allow witness Jorge González to examine a photograph and testify to the place where Graciano was killed. This witness was asked nothing on direct examination about the place of the occurrence in relation to that photograph; therefore, he could not be cross-examined on that matter. Underhill on Criminal Evidence, p. 401.

The fourth assignment is that the court erred in allowing the district attorney to cross-examine Vicente Guzmán on questions which were not the subject of the direct examination of the accused. Vicente Guzmán was called by the accused as his witness to testify about what his son Timoteo, a witness for the prosecution, told him upon arriving at his home without his brother at eight o'clock at night, and his testimony does not convince us that he was cross-examined by the prosecution on matters distinct from those of the direct examination.

On the same ground is based the eighth assignment as regards witness Dionisio Reyes. Examined by the defense, he testified that he knew the ward of Jobos and that Timoteo Guzmán was in his house about eight o'clock. The cross-

examination was pertinent because it referred to matters related to the testimony given by him, that is, about the houses near his at the place of the occurrence.

The assignments of error numbered 9, 12, 13 and 14 are related to each other and may be considered together. They are as follows:

"9. In convicting the accused of the crime of murder without fully proving the charges of the information.

"12. In not instructing the jury specifically on the rights of the accused under sections 207, 209 and 211 of the Penal Code.

"13. In instructing the jury specifically on murder and involuntary homicide without considering other crimes which might fall within the facts of the case.

"14. In not acquitting the accused of the crime charged because it was not proved by direct evidence beyond all reasonable doubt, the jury committing manifest error in weighing the facts."

According to the testimony of several witnesses for the prosecution, on seeing the boy Graciano at the brook the accused fired a shot at him, then ordered him to raise his head and when Graciano obeyed he fired a second shot and killed him. The accused testified that he fired his pistol twice that afternoon, but not at any person. The jury did not commit error in giving credit to the evidence for the prosecution nor in classifying the crime as murder in the second degree.

As regards the court's instruction on involuntary homicide in accordance with the theory of the defense without referring to the cases in which homicide is justifiable and the result thereof (sections 207, 209 and 211 of the Penal Code), we must say that it was unnecessary to give such instructions because voluntary homicide did not appear from the evidence, nor was this the theory of the defense, according to the testimony of the appellant, nor was any request made for such instruction. *People* v. *Rosado,* 17 P.R.R. 417.

There remain to be considered assignments 10 and 11 referring to the instructions given by the court to the jury, although they were not excepted to in the trial court as required, the accused taking only a general exception to all of the instructions given by the court. *People* v. *Lebrón,* 23 P.R.R. 611; *People* v. *Vélez,* 32 P.R.R. 363.

The court addressed the jury as follows:

"The law presumes in all criminal cases that the accused is innocent until the contrary is proved satisfactorily and by competent evidence, and it is a rule of law that his guilt must be proved clearly. This presumption of innocence accompanies the accused during the trial and the jury should bear it in mind also while deliberating."

That instruction did not lead the jury to believe, as claimed by the appellant, that the presumption of innocence accompanies the accused only during the trial and that while deliberating they should bear in mind that the innocence accompanies the accused only during the trial. What it says is that it accompanies the accused during the trial and that the jury should bear it in mind while deliberating, that is, that he is innocent during the deliberation, as was held in *People* v. *Plata,* 38 P.R.R. 80.

The court also gave the following instruction:

"By an express provision of law the accused may or may not testify, as he may choose. It is a sacred privilege. A right which he has. In this case the accused testified. He made himself a witness and therefore his testimony should be considered as that of any other witness, taking into account, of course, the interest of every accused in his own case."

It is alleged by the appellant that that instruction is erroneous because in saying that the jury should take into account the interest of every accused in his own case it raises serious suspicions about that testimony and renders it invalid and self-contradictory to the eyes of the jurors.

The court instructed the jury correctly in saying that the

testimony of the accused should be considered as that of any other witness, and the fact of adding that they should take into account the interest of every accused in his own case does not tend to discredit the testimony of the accused and invalidate it; therefore, it was not erroneous, for it simply told the jury what every juror knows, that is, that every accused has an interest in his own case, a circumstance which according to the law must be borne in mind in weighing the testimony of any witness. *People* v. *Morales,* 11 P.R.R. 294. Identical and similar instructions have been held valid in the following cases cited in 19 Lawyers' Rep. Ann., New Series, pp. 814 and 817: *People* v. *Herrick,* 59 Mich. 563, 26 N. W. 767; *Smith* v. *State,* 118 Ala. 117, 24 So. 55; *State* v. *Moll-chen,* 53 Iowa, 310, 5 N. W. 186; *State* v. *Zorn,* 71 Mo. 415; *State* v. *Morrison,* 104 Mo. 638, 16 S. W. 492; *State* v. *Morse,* 66 Mo. App. 305; *State* v. *Sanders,* 76 Mo. 35; *State* v. *Mounce,* 106 Mo. 226, 17 S. W. 226; *State* v. *Turner,* 110 Mo. 196, 19 S. W. 645; *State* v. *Young,* 99 Mo. 666, 12 S. W. 879, 2d appeal 105 Mo. 634, 16 S. W. 408; *People* v. *Rosch,* 107 Mich. 251, 65 N. W. 99; *Dryman* v. *State,* 102 Ala. 130, 15 So. 433; *State* v. *Nordstrom,* 7 Wash. 506, 35 Pac. 382; *Emery* v. *State,* 101 Wis. 627, 78 N. W. 145; *Felker* v. *State,* 54 Ark. 489, 16 S. W. 663; *Dunn* v. *People,* 109 Ill. 635; *Anderson* v. *State,* 104 Ind. 467, 4 N. E. 63; *Territory* v. *Taylor,* 11 N. M. 588, 71 Pac. 489; *People* v. *Hess,* 8 Appeal Div. 143, 40 N. Y. Sup. 486; *U. S.* v. *Kenny,* 90 Fed. 297; *People* v. *Fibbs,* 143 Cal. 102; *Regan* v. *United States,* 157 U. S. 301.

Notwithstanding the foregoing we take advantage of this opportunity to recommend to the district courts that they be careful in their language when instructing juries on the testimony of an accused so that it can not be construed in the sense of leading the jurors to believe that it has no value and that consequently their judgments may be reversed and new trials ordered with the consequent prejudice to the speedy administration of justice.

The judgment appealed from must be affirmed.