## PATRICK O'NEILL, Respondent, v. WILLIAM BLASE, SR., Appellant.

### St. Louis Court of Appeals, May 27, 1902.

1. **Vicious Animal: DAMAGES: INJURIES.** Where a vicious animal is to be conducted through the streets of a city, it is the duty of the owner to make adequate provision to prevent the animal from doing damage to passers-by. The owner is absolutely liable for any injury by it to any person exercising ordinary care, in a place where the latter has a right to be.

2. ————: ————: **KNOWLEDGE OF OWNER OF VICIOUS HABITS OF ANIMAL.** The duty of an owner to restrain a vicious animal arises when he acquires knowledge of its vicious nature. It is not essential to such duty that the particular act which produces injury should have occurred before.

3. ————: ————: **NOTICE TO AGENT.** Notice to the owner's agent in charge of his business is sufficient notice of the vicious disposition of an animal used in that business.

4. **Servant: INDEPENDENT CONTRACTOR.** Whether an employee is a servant or independent contractor depends on the nature of the work, the terms of the contract, the occupation of the employee and the attendant circumstances.

5. ————: ————: **CONSTRUCTION.** A laborer engaged for fifty cents to drive an animal to defendant's shop from another part of the city, is held to be a servant, not an independent contractor.

6. **Instruction: REASONABLE SATISFACTION: ERROR.** An instruction which requires the jury to find the necessary facts to their "reasonable satisfaction" as well as by the greater credibility of the testimony, is not erroneous because of such language.

7. ————: **INJURIES.** An instruction which authorizes compensation for injuries of a "permanent character" caused "upon plaintiff," is not erroneous as being too general. It is correct as far as it goes.

8. ————: **REFERENCE TO PARTICULAR WITNESS: PRACTICE, TRIAL.** An instruction referring to a particular witness does not

necessarily amount to "singling out" his evidence. The propriety of such reference depends upon whether it is fair or not in view of the condition of the case.

9. ———: REFERENCE TO PARTIES TO A CAUSE IN AN INSTRUCTION. It is not improper to refer by an instruction to the testimony of parties to the cause, and to their interest therein.

10. ———: REFERENCE TO FACTS IN EVIDENCE. There is no reversible error in an instruction referring to certain facts in evidence when connected with the other instructions by appropriate language in such way as to give the jury a full view of all the controverted issues.

11. ———: ISSUE: ASSUMPTION OF FACT IN AN INSTRUCTION. An instruction should not assume a fact in issue when the cause is submitted for verdict.

12 .Parties, When Bound by Action on Appeal. Parties are bound on appeal by positions taken by them in the trial court; and no one may complain on appeal of an error either invited or adopted by him.

13. Cause of Action: PLEADING TWO CAUSES OF ACTION IN ONE COUNT: MOTION TO ELECT: PRACTICE. Where two causes of action which might be joined in one petition are united in one count, an objection thereto by a motion to elect at the trial is too late.

14. ———: ———: ———. A cause of action for damages on account of knowingly keeping a vicious animal, is essentially different from one based upon mere negligence in keeping an animal. They may be joined in one petition, in the circumstances stated in the opinion; but if merged in one count, objection thereto is waived unless made before answer.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

AFFIRMED.

*Geo. W. Lubke, Jr.,* and *Lambert E. Walther* for appellant.

(1) An action for damages growing out of the keeping of an animal after knowledge of its viciousness, is distinct

from one based upon negligence in the manner of keeping. Cox v. Murphy, 82 Ga. 627. (2) When two causes of action are blended in one count, the remedy is by motion to elect. Otis v. Bank, 35 Mo. 128; State ex rel. v. Tittmann, 103 Mo. 553; Mooney v. Kennett, 19 Mo. 554; Christal v. Craig, 80 Mo. 371. And such motion may be made at any time before the case is submitted to the jury. Southworth Co. v. Lamb, 82 Mo. 247; McQuillin's Pl. and Pr., sec. 198. (3) One rendering service for another and representing the will of his employer only as to the result of his work and not as to the means by which it is accomplished, is an independent contractor. Fink v. Mo. Furnace Co., 82 Mo. 276; Railroad v. Farrar, 111 Ind. 195; Wood on Master and Servant (2 Ed.), pp. 593, 599, 609; Moore v. Sanborne, 2 Mich. 519; Kellogg v. Payne, 21 Iowa 575; Milligan v. Wedge, 12 Ad. & E. 737. (4) An instruction on the measure of damages should inform the jury of the proper elements of compensation. Hawes v. Stock Yards Co., 103 Mo. 60. (5) The question as to what is remote or proximate damages should not be left to the jury. Stewart v. Clinton, 79 Mo. 603. (6) Notice which will charge the owner with liability for vicious conduct of an animal, must be notice that it was inclined to do the particular mischief that has been done. Bell v. Leslie, 24 Mo. App. 667; Twigg v. Ryland, 62 Md. 386. (7) Instructions must not be contradictory or inconsistent. State v. Herrell, 97 Mo. 105; Wood v. Steamboat Co., 19 Mo. 529; Redpath Bros. v. Lawrence, 42 Mo. App. 112; Straat v. Hayward, 37 Mo. App. 591.

*O. J. Mudd* for respondent.

(1) There is but one cause of action stated in the petition. Christal v. Craig, 80 Mo. 371; State ex rel. v. Tittmann, 103 Mo. 563; Casey v. Aubuchon, 25 Mo. App. 91. (2) But by pleading to the merits and going to trial, defend-

ant waives the right to present and urge the point. Haase v. Distilling Co., 64 Mo. App. 131; Cofer v. Riseling, 153 Mo. 634; Williamson v. Fisher, 50 Mo. 198; Finney v. Randolph, 68 Mo. App. 560; Paddock v. Somers, 102 Mo. 235; Coffman v. Walton, 50 Mo. App. 404. (3) One driving or carrying through the streets of the city an animal known to be vicious and disposed to attack persons, is, if not an insurer, at least bound to use the highest degree of care to protect persons on the street from injury. 2 Am. and Eng. Ency. of Law (2 Ed.), 362; Ficken v. Jones, 28 Cal. 618; Eichel v. Senhum, 2 Ind. App. 208; Hudson v. Roberts, 6 Exch. 695; Lyons v. Merrick, 105 Mass. 71; Linnehan v. Sampson, 126 Mass. 511; 28 Cent. L. J. 135, 136; Reynolds v. Hassey, 5 Atl. Rep. 458; Godean v. Blood, 52 Vt. 251; Stumps v. Kelly, 22 Ill. 140-2; 1 Redfield & Shearman on Neg., sec. 17, p. 18. (4) The gist of the action is carrying the cow through the streets with knowledge of her vicious disposition. 2 Am. and Eng. Ency. of Law (2 Ed.), 353; Bickel v. Bickel, 48 Mo. 396. (5) The instruction on the measure of damages is not reversible error. The damages are not immoderate. Hanniford v. City of Kansas, 103 Mo. 172; Rosenkranz v. Railway, 108 Mo. 9; Bigelow v. Railway, 48 Mo. App. 367; Chilton v. St. Joseph, 143 Mo. 192.

BARCLAY, J.—This action is for personal injuries caused by an attack upon the plaintiff by a cow.

Plaintiff's evidence tended to show that the defendant, Mr. Blase, was engaged in business as a butcher on North Broadway in St. Louis. His two sons, Herman and William, Jr., had the general management of his business. In May, 1900, Herman Blase bought eight cows of Mr. Gerhart (one of the defendants). The cow in question was one of the lot. Gerhart was a dairyman, who lived in the north part of the city, some blocks distant from the place of business of defendant, Mr. Blase. Herman Blase saw the cows before he pur-

chased them from Mr. Gerhart.   They were in a stable on the premises of the latter.   Mr. Blase had not seen the cows before, nor did he see them again until they were brought to his father's slaughterhouse.   The defendant Blase took no active part in the business carried on by his sons for him.  He had no personal knowledge of the facts out of which this case arose, until after the plaintiff was hurt.  Some days before that event, Herman Blase sent a colored man, and a boy by the name of Spieser, to get three of the cows, giving the colored man a written order to Gerhart for them.   The boy Speiser was about fifteen years old.   Gerhart delivered the cows into the charge of the colored man and the boy.   They started with the cows towards Blase's slaughterhouse.   One of the cows was a muley cow, the one which caused the damage in this case.   She persisted in turning back towards Gerhart's. After several attempts to drive her with the others, the colored man and his assistant left her in a neighboring pasture and drove the other two to the Blase premises.   The afternoon of the same day, the colored man and the boy were sent back for the refractory cow mentioned; but they could not or did not get her out of the pasture.   That evening Herman Blase went over to Gerhart's to see if the cow had returned there, and to make arrangements to have her delivered at his place of business.   He then made an agreement with a man named Simon (who had worked at odd jobs for Gerhart, and other dairymen, for some five or six years) to deliver the cow to Blase's slaughterhouse for fifty cents.   The particulars of the evidence on this point will more fully appear further on.

The next day (or the second day) thereafter Simon borrowed Gerhart's horse and wagon, tied the cow to the rear of the wagon with a rope of his own and undertook to lead the cow to Blase's premises.   The rope was tied around the cow's neck and a noose around her mouth.   The other end of the rope was then fastened to the end of the wagon.   Simon had

engaged the services of a friend named Scheer to aid in the work he had undertaken.

The plaintiff is a man of advanced years, about sixty-five years old.  He lived at No. 7614 North Broadway in St. Louis.  He had been in business for many years as a landscape gardener, but lately had not been employed actively. His sons took the active work off his hands.  The mishap to plaintiff occurred about noon, June 1, 1900.

According to his statement he was sitting on a bench at his front gate when the two young men came along Broadway with the cow tied as above described.  Broadway is a public street of St. Louis at that point.  As the cow got opposite plaintiff's gate she appeared to fall and to be in distress because of being so tightly tied.  The wagon was stopped and the plaintiff called out some words of warning about "the cow being smothered," or words to that effect.  One of the men in charge of the cow remarked that the cow was mean and would "poke" as soon as she got up.  Plaintiff turned around and walked through his gate into the yard and hurried towards the door of his house, some twenty feet back from the street. Before he reached a place of safety, the cow which had gotten loose, ran up behind and struck him in the back.  She knocked him down and trampled upon him.  Bystanders rescued him and got him into the house.  In the meanwhile he had been seriously injured by the cow's attack.

There was some conflict of evidence touching the exact movements of the plaintiff immediately before he was injured, but there is overwhelming proof that the cow attacked him in his own yard as he was endeavoring to escape into the house, and the jury so found in passing on the issues submitted by the instructions.

In a short time the cow was captured, tied to a telegraph pole and afterwards taken to Blase's place, where she was slaughtered the same day.

On the subject of defendant's knowledge of the vicious

character of the cow, it appeared by testimony submitted by plaintiff, that the boy Speiser (who went with the colored man to get the cow from Gerhart's) had been attacked by the cow some days before the accident to plaintiff.   According to this boy, the cow undertook to attack him again on the morning following his first trip to Gerhart's.   This boy also testified that before the day of plaintiff's injury he had informed young Mr. Blase (one of the managers of the defendant's busi- ness) of this performance of the cow, but Mr. Blase paid little attention to the information and merely laughed.

To quote the language of the boy, touching notice of the vicious character of the cow, he informed the younger Blase, that the cow wanted "to buck him," and had "chased" him.

The defendant's evidence tended to contradict that given on behalf of plaintiff in some respects.   But it does not seem necessary to comment upon the conflict of evidence except in those particulars which will be mentioned in the course of the opinion.

The place where the cow escaped was within the limits of the city of St. Louis on a public street—North Broad- way.

The case was tried before Judge ZACHRITZ and a jury. There was a finding for plaintiff in the sum of one thousand dollars as against defendant Blase.

The other defendant, Gerhart, was relieved of liability by an instruction which declared that, under the pleadings and the evidence, plaintiff could not recover against said de- fendant.

After the usual motions and exceptions, the defendant took this appeal.

Any other facts necessary to elucidate the rulings of the court will be mentioned in the progress of the opinion.

1.   The first claim of error by appellant is that the court should have sustained defendant's oral motion made at the

O'Neill v. Blase.

trial to require plaintiff to elect upon which of the two causes of action stated in the petition he would proceed.

Defendant made a similar motion when the evidence was all in, but the court overruled the motion in each instance.

The motion to elect is stated to have been made on "the same grounds as heretofore stated to the court in a written motion heretofore filed." The original written motion does not appear in the transcript of record before us, and we can only conjecture the reasons on which it was based. Assuming that the motion was based upon the grounds which are discussed, we consider that the trial court's ruling was entirely proper.

The petition does not mingle two distinct causes of action in one count. It states (on the issue of negligence) that, with full knowledge of the cow's vicious disposition, defendant's servants caused the cow to be harassed and annoyed in such a manner as to excite her; that she was insufficiently secured; and that defendant failed to provide sufficient servants to properly guide and control the cow, thus allowing her to escape and break loose on North Broadway, a street in the city of St. Louis.

These various charges of neglect on the part of defendant might all be properly set forth in one statement of claim, at least as against an objection made at the trial.

Where causes of action which may be joined in the same petition if severally stated, as provided by the code (R. S. 1899, sec. 593) are mingled in one count, the objection to such a joinder must be made before answer, and exception must be duly preserved to an adverse ruling thereon. Otherwise the objection is not available for review according to the provisions of section 602 (R. S. 1899).

The claim is advanced by appellant that a cause of action for damages, on account of knowingly keeping a dangerous animal, is mingled in the petition here with a demand based upon mere negligence in the manner of keeping or restraining

the animal; and it is said that such a juncture of claims is improper and may be objected to at the trial by oral motion to elect.

A case is cited (Cox v. Murphy, 82 Ga. 623) which holds that those two claims are not identical in nature, but so dissimilar that the addition of the latter of them by amendment to a case counting only on the former cause of action is not permissible under the Georgia code which forbids the amendment of a pleading so as to add a new and distinct cause of action or new and distinct parties, unless expressly authorized by law.    Code (Ga.) 1882, sec. 3480.

It is clear that the Georgia ruling has no pertinency to the question of procedure raised by the assignment of error we are considering in the case at bar.

Under the Missouri code the objection is too late, irrespective of any other weakness in it.    The two claims both depend on torts.    The facts show that they arise out of the same transaction, and in all respects they answer the requirements for joinder in the same petition.    So if we assume that they should have been separately stated, the objection to the mode of statement was waived under our home code provision already cited (R. S. 1899, sec. 602).    House v. Lowell, 45 Mo. 381; Thompson v. School Dist., 71 Mo. 495; Paddock v. Somes, 102 Mo. 235.

2.   The second assignment of error concerns the relation of Simon to the case as a so-called "independent contractor."

The substance of the matter is that Simon was engaged on behalf of defendant, by his son, one of the managers of his business, to bring the cow to defendant's butchering establishment for fifty cents.

As this feature of the case is supposed by appellant to possess some importance, it may be well to mention the particulars of the testimony on the issue of the alleged special or independent employment of Simon.

Simon was a witness on behalf of defendant. He gave this account of his engagement:

"Mr. Blase came there the same evening and asked for his cow; he asked if I would fetch the cow down for him and I said yes, if you will pay me, and he says, 'I will give you half a dollar,' and when I came down with the cow he gave me a dollar; I agreed to bring her down for half a dollar; I got the rope and used Gerhart's wagon."

He further testified that he was living at the time at a neighboring dairy and worked for Mr. Gerhart (one of the original defendants) when the latter had any work for him. He cut feed, milked, and delivered milk. ' The man Scheer who was assisting Simon when plaintiff was injured said that he knew Simon well. The night before the accident Simon asked him to go with him to take the cow to Mr. Blase's. That was the occasion when Mr. Blase engaged Simon to transfer the cow. Herman Blase, son of defendant and one of the managers of his establishment, testified that when he learned what had occurred on the first attempt to bring the cow to his premises, he went in the evening to Gerhart's to see whether the cow had returned there. While he was asking Mr. Gerhart to send the cow over, Simon came into the yard. Mr. Gerhart said: "Here is a man now that will take it over." Mr. Blase then told Simon that he would give him fifty cents to bring her over. He (Blase) did not furnish wagon, horse or rope. He did not have anything to do with the way in which they tied her; did not know whether they would come in the morning or afternoon; the next he knew of the matter was when he heard of plaintiff's injury.

Mr. Gerhart (one of the defendants) called by the plaintiff as a witness, testified that Simon lived at his house when he worked for him; that he was not living there when he undertook to drive the cow to Blase's. He had been working for witness two days before and was paid a dollar and a half

a day and board when he was so employed. Gerhart was present at the agreement between Simon and Blase. He says simply that Blase agreed to pay Simon fifty cents to deliver the cow.

.Upon this evidence defendant claims that the court should have given a peremptory instruction to find for the defendant on the ground that Simon was an independent contractor, and, consequently, that defendant was not liable for any neglect on Simon's part to take precautions while driving the cow through the streets.

There is nothing in the nature of the employment or in the contract to indicate that Simon was not subject to the control, supervision and direction of Blase had he seen fit to exercise such control over Simon's movements. Nor is there anything whatever in the testimony to prove that Simon exercised a distinct calling as did the colored teamster, Stevenson, in Fink v. Furnace Co., 82 Mo. 276, and the licensed drover described in an English case cited by appellant. Simon was doing any sort of ordinary work at that time.

To constitute an independent contractor, so as to relieve his employer from liability for his conduct, it must at least appear that the work to be performed was committed exclusively to the discretion of the contractor. The independence of the contractor may appear by the nature of the work sometimes and at other times by the terms of the contract, or by the calling of the contractor. The nature of the work in question in this case, no less than the agreement itself, totally fails to establish a foundation for holding Simon to be an independent contractor in the matter of driving the cow to defendant's place of business. The fact that the work was to be paid for in one price is not decisive of the question.

In Waters v. Fuel Company, 52 Minn. 474 (38 Am. St. Rep. 564), the employee claimed to be an independent contractor was a teamster who delivered coal for defendant at so much per ton. He owned the team and running-gear of his

O'Neill v. Blase.

wagon, while defendant furnished him the wagon-box.    The injury complained of occurred from his carelessness in failing to properly close a coal-hole on certain premises where, under the agreement aforesaid, he had delivered coal to a customer of defendant.    In a careful review of the law Judge VANDERBURGH said that, in determining the question whether the relation of the teamster and employer was that of master and servant, it was not material whether the former was "paid by the load, by the hour, or by the day, for his work."

In Holmes v. Railway Company, 49 La. Ann. 1465, plaintiff was injured by the carelessness of one Seals, employed by the agent of the defendant company to unload coal cars at one dollar and a half or two dollars and a half a car. Seals was not controlled in unloading the cars.    At the time of the injury, while thus unloading coal for a brewery on the levee in New Orleans, he carelessly threw a heavy board from a car and injured plaintiff.    The employee owned his shovel, and occasionally employed a hand to help him.    The court held that Seals was not an independent contractor, but merely a servant of the railway company.    In making that ruling it was said to be immaterial that he was paid by the car for his work.    The court further held that persons working by the piece are not necessarily independent contractors.    The criterion of responsibility was considered to depend on the nature of the work and the relation of the parties as ascertained by the circumstances of the case.

In Sadler v. Henlock, 4 El. & Bl. 570, plaintiff's horse was injured by stepping into an unsafe part of a public highway, negligently left in a dangerous condition by a person employed by the defendant.    The employee was engaged to clean out a drain on defendant's land without assistance.    He did the work without any direction or inspection by defendant. He received five shillings for the job from defendant, by agreement.    In the progress of the work he replaced the surface of the highway in an improper manner, in consequence of which

plaintiff's horse received the injury. The case had careful consideration by the Court of Queen's Bench, then (1855) composed of very eminent judges, among whom were Chief Justice CAMPBELL and Judges COLERIDGE and CROMPTON, names well known throughout the legal world.

The chief justice declared that it was a matter of indifference whether the party who did the drain work was or was not paid by the job. CROMPTON, J., said "no distinction can be drawn from the circumstance of the man being employed at so much a day or by the job." All the judges agreed that the nature of the employment made it perfectly plain that the employee was a servant and not an independent contractor.

This decision was approvingly quoted in Turner v. Railway, 33 L. T. N. S. 431. It is further significant that one of the judges who took part was also a member of the same court when Milligan v. Wedge (to be mentioned again in this opinion) was decided.

The Sadler case bears a striking resemblance to the case at bar. Here the man Simon, a dairy laborer, was engaged to drive a cow from one place to another for fifty cents. All the facts and circumstances of the matter plainly show that the agreement was simply another mode for paying him for his time. We are satisfied that he was as fully subject to the direction of his employer in performing the work as though that stipulation had been expressly mentioned between the parties. He was a mere servant.

In Milligan v. Wedge, 12 Ad. & El. 737, an English decision cited for appellant, the employee held to be an independent contractor, was a licensed drover exercising as such a distinct calling in London, where the municipal regulations forbade any unlicensed person to drive cattle for hire. Defendant employed such a drover to fetch a bullock from a place in London to a slaughterhouse outside the city. The drover employed a boy to drive the animal with others; while doing so the bullock ran into a showroom and broke some articles.

That led to the action.  The chief justice (then Lord DEN-
MAN) and Judge WILLIAMS put the judgment for defendant
on the ground that the drover was exercising an independent
calling.   All agreed that the relation of master and servant
did not exist between the defendant and the boy.

That case was mentioned in Morgan v. Bowman, 22 Mo.
549, and the facts thereof were distinguished by Judge LEON-
ARD from those before the court in the Missouri case on the
ground that there was "no proof" in the latter that defendant
had divested himself by engagement "of all right of control."
In the Missouri case the employee was held to be a servant,
after a discussion of all the facts bearing on his employment.

We do not regard either of the last two decisions as in
conflict with the ruling we make here, which is that it can not
properly be declared, as a conclusion of law, on the evidence
recited, that Simon was an independent contractor.   Hence,
the learned trial judge was not in error in refusing a peremp-
tory instruction to find for defendant on that ground.

3.   Appellant, however, further assigns error on the first
instruction (which will be fully quoted in another paragraph
of this opinion) in that the court treats defendant as liable for
the acts of Simon in driving the cow, without a finding that
he was defendant's servant as distinguished from an independ-
ent contractor.

But that instruction required the jury to find that the
wrongful acts of defendant were knowingly done.   If, accord-
ing to the theory of that instruction, defendant was aware of
the vicious disposition of the cow, before she was taken into
the public streets, then it would be immaterial whether or not
Simon was an independent contractor.

It is the duty of the owner of an animal of known vicious
disposition to restrain it so as to prevent the indulgence of its
mischievous propensities.   Speckman v. Kreig, 79 Mo. App.
(St. L.) 376.   One who puts such an animal in charge of an
employee, to be conducted along the public streets of a city

can not avoid or evade responsibility by investing the employee with the character of an independent contractor, where, as in the case at bar, no provision by contract or otherwise is made by the employer to have the work done with such care as the law requires for the due protection of others in such circumstances.

We conclude that the learned trial judge correctly disposed of the claim that Simon was an independent contractor in every view of the facts.

4.   Appellant complains of the first instruction for plaintiff in several particulars.   It is as follows:

"The court instructs the jury that, if you find and believe from the evidence to your *reasonable satisfaction,* and by the greater weight of credibility of the testimony, that on or about the first day of June, 1900, the defendant, by and through his agent, servant or employee, undertook to carry the cow in question through the streets of the city of St. Louis, and along Broadway at the place of the alleged injury to plaintiff, and, that at such time, the cow was of a vicious disposition as defined by the court's instructions, and such disposition was known to defendant at and before the time of the alleged injury to plaintiff, and before the cow was taken into the streets on said occasion, then it was the duty of the defendant to adopt suitable measures for the carriage of the cow through the streets, so as to prevent injury by her to persons on or near the streets upon or along which the cow was to be driven. And if you believe, under the circumstances, that, by the exercise of the utmost care, prudence and caution, defendant might have adopted such means of carrying the cow as would have prevented injury to plaintiff by the cow, but you further find he failed to adopt such means, and that, by reason of such failure, the cow attacked and injured plaintiff, then your verdict must be for plaintiff."

We have indicated by italics some of the words which appellant questions.

If any just criticism can be passed on the language "reasonable satisfaction," above quoted, it is that it called for too much, rather than too little, proof, on the part of plaintiff. If the jury found the facts recited in the instruction to be true by the "greater weight of credibility of the testimony," as well as to their "reasonable satisfaction," said facts would be at least sufficiently proved. The "greater weight of credibility" would be sufficient of itself. It could do defendant no harm to declare that said facts should be further proven to their "reasonable satisfaction."

5. Appellant insists that the duty of defendant was stated too rigorously against him in the first instruction, wherein a higher degree of care than that dictated by ordinary prudence was imposed on defendant. The court required of defendant the utmost care, prudence and caution in the adopting of measures to prevent injuries by the cow to persons on the street along which she was to be driven.

We agree with defendant's learned counsel in their claim that the terms of the court's instruction required of defendant the highest degree of care in the use of means to avoid injuries by the animal to people on the streets. But we regard as correct the rule of law laid down by the court, at least as against any complaint by defendant.

The weight of authority, and we think of reason as well, supports the proposition that the owner of a vicious animal is absolutely liable for any injury done by it to any person exercising ordinary care himself, in a place where the latter has the right to be. We do not conceive it necessary to enlarge upon this ruling, especially as our comment on the case has already become quite elaborate. We merely cite some precedents which support the conclusion announced. 1 Hale P. C. (1 Am. Ed. 1847), 430; Clowdis v. Flume Co., 118 Calif. 315; Marsel v. Bowman, 62 Iowa 57; Muller v. McKesson, 73 N. Y. 195; Rogers v. Rogers, 4 N. Y. St. 373 (decision by Judge BRADLEY, afterwards of the court of appeals).

6.   Complaint is made of the third instruction for plaintiff, which follows.   In the copy some words are italicised to indicate special objections thereto by appellant.

"The jury are instructed that as to the charge and requirement in the instructions of the court, of knowledge on part of defendant *of the vicious disposition of the cow,* if you find that the boy Dave Speiser was sent by one of defendant's sons, in the course of the management of defendant's business, to get said cow, and said Dave Speiser went after the cow, and while attempting to get the cow became aware *of the vicious disposition of the cow,* and then you believe that said Speiser communicated said knowledge to such son of defendant, this would be sufficient knowledge to defendant to satisfy the charge and requirement of the instructions as to knowledge of vicious disposition."

*a.*   One criticism of this instruction relates to the words in italics.   They are said to amount to a ruling by the court that the cow was of vicious disposition.

The petition alleged that such was the cow's disposition. The answer contained a general denial and a plea of contributory negligence in the course of which occurs this statement: "that plaintiff, although fully knowing the vicious disposition of said cow, if vicious she was, did, notwithstanding, willfully place himself in the way of said cow in a position of danger."

In one of the instructions (the ninth) given by the court at the instance of defendant, we note this language, viz.:

"The court instructs the jury, that if they find and believe from the evidence that plaintiff was informed of the viciousness of said cow and her disposition to attack persons, and notwithstanding put himself in the way of said cow, then they will find in favor of defendants."

In Missouri, it is a recognized precept of our law of procedure that a party may not successfully complain on appeal of an error which he has either invited or freely adopted.

Wolfe v. Supreme Lodge, 106 Mo. 675; Phelps v. Salisbury, 161 Mo. 14.

The third instruction for plaintiff, challenged now as faulty, was not isolated by its terms, but on the contrary was expressly connected with other instructions. Its closing lines indicate that it was to be read with the other instructions touching "knowledge of vicious disposition." Now the first instruction on the same side (already quoted) requires a finding of such knowledge and that "the cow was of a vicious disposition," before a verdict for plaintiff is authorized.

Therefore, even if the issue of the cow's vicious disposition had not been admitted away by the defendant's course in the cause at and before the trial, the jury were required by plaintiff's instructions to find as a fact that the cow was vicious before they could give plaintiff a verdict. Johnson v. Eckberg, 94 Ill. App. 634.

*b.* Appellant next insists that there is error in "singling out" the evidence of the boy Speiser, and it is claimed that the instruction is a comment on the evidence.

Much that we have already said bears also on this assignment of error.

The only testimony before the court tending to show express notice to defendant (through his business manager) was given by Speiser. It was contradicted by Herman Blase, defendant's son.

Whether the mention by an instruction of the testimony of a particular witness is proper or improper, often depends upon the state of the facts presented when the cause is submitted to the triers of fact. The attention of juries in Missouri is frequently called specifically to the testimony of parties to the case and to their interest therein, and the Supreme Court has approved the practice. State v. Turner, 110 Mo. 196; Feary v. Railway, 162 Mo. 75.

The test of the propriety of referring to the testimony of a witness is found by ascertaining whether such reference

is fair or not. It is often convenient, if not necessary, to so· refer in order to elucidate points in the case which could not otherwise be so well made clear. Bank v. Ferris, 118 Ill. 465; Beurmann v. Van Buren, 44 Mich. 496; Garrett v. Garett, 27 Ala. 687 (followed in Hart v. Bray, 50 Ala. 446); · Shaw v. Sun Prairie, 74 Wis. 105.

The purpose of the third instruction here was to advise the jury what would amount to notice to defendant of the cow's disposition. The boy testified that the cow tried to attack him on two occasions, "made a break" for him, and that he told defendant's son, Herman (one of the managers of his business) on the day before the cow hit plaintiff, that the cow wanted to "buck" him and had "chased" him (to quote his words). Mr. Herman Blase denied these statements. The question of credibility was for the triers of facts.

In the light of the testimony before the court we consider that the instruction was not erroneous for mentioning Speiser's name or his testimony, when the instruction itself so plainly blends, by its own terms, with the first instruction for plaintiff and thereby precludes any idea of putting the issue of the case on any such narrow ground as the mere question of notice. When an instruction, which relates only to certain features of the testimony, refers also to other instructions in such a way as to give the jury a full view of all the controverted issues, and the court considers that those issues have all been fairly presented, there is no reversible error. Gordon v. Burris, 153 Mo. 223.

We hold that the instruction in question was not improper for mentioning Speiser's name and testimony, and that it was not a comment on the effect of the testimony in any respect.

7. Defendant complains of the modification by the court of one of his instructions by the addition of the last six words, marked by italics in the following copy thereof:

"The court instructs the jury that knowledge on the part of defendants that the cow in question was disposed to run

away, is not sufficient to support a finding in favor of plaintiff; but that in order to entitle plaintiff to recover against defendant he must prove to the satisfaction of the jury that such defendant knew that the cow was disposed to attack persons; *or was of a vicious disposition.*"

It was contended that the modification was error, and that the notice which will charge an owner with liability for the performances of a dangerous animal must be notice of the particular propensity which causes the injury complained of.

Knowledge of the disposition of an animal is important in its bearing on the owner's obligation to restrain him. This is so not only by the immemorial common law of England and of this country; but it was so even by the Mosiac law. Exodus, ch. 21, 28-32.

When the owner of an animal acquires knowledge, or where the facts reasonably warrant an inference that he has been advised of the vicious disposition of his animal, he is in duty bound to use those precautions for its restraint which the law requires for the protection of the public, already defined in this opinion. It is not essential to the owner's liability that he should have notice of the particular sort of act which produces the injury by an animal in a case like this. He must not wait until his dog bites somebody before taking notice of the dog's conduct, where it has been such as to warn a man of ordinary prudence that the animal is ferocious or vicious in disposition. Godeau v. Blood, 52 Vt. 251; Rider v. White, 65 N. Y. 54; Worth v. Gilling, 2 C. P. L. R. 1; Mann v. Weiland, 81½ Penn. St. 243; Robinson v. Marino, 3 Wash. 434; Kennett v. Engle, 105 Mich. 693.

In the case in hand, the testimony of the boy Speiser tended to prove notice to defendant's manager that the cow had tried to attack him, before the day when plaintiff received his injury. This was notice of a "vicious disposition."

Notice of this sort to the owner's agent in charge of the

particular business over which the agent has authority, is notice to the owner in contemplation of law, as was declared by the court in the third instruction heretofore quoted. Baldwin v. Casella, 7 Ex. L. R. 325; Clowdis v. Flume Co., 118 Calif. 315.

We hold that there was no error in the court's modification of the defendant's instruction under discussion.

8.    There is an assignment of error founded on the instruction for plaintiff as to the measure of recovery. It was as follows:

"6.    If under the evidence and instructions you find a verdict for the plaintiff, you shall assess his damages in such sum as you may believe will compensate plaintiff:

"First.    For his physical and mental suffering, if any, directly caused by his injuries, provided such injuries must be the direct result of the force and violence of the attack and striking by the cow;

"Second.    If injuries were caused upon plaintiff which are of a permanent character, then you may award him damages such as will reasonably compensate for such permanent injuries;

"Third.    For any expense incurred for medical attendance made necessary in the treatment and cure of his injuries. Such damages, however, shall not altogether exceed the sum of two thousand dollars."

*a.* · It is claimed that this instruction assumes the disputed fact that the cow struck plaintiff. It is settled law in this State that an instruction should not assume a fact in issue which the adverse party still denies at the time when the cause is to be submitted for a verdict. Thompson v. Botts, 8 Mo. 710.

Here, however, no assumption of fact appears. The whole instruction proceeds on the clearly stated hypothesis that the jury are first to find for plaintiff under the evidence and instructions.

O'Neill v. Blase.

The instructions for plaintiff on which any verdict for him could be returned required the finding that the cow "attacked and injured plaintiff." There was no error in the sixth instruction in that particular. Klutts v. Railway, 75 Mo. 642.

*b.* The defendant argues that the second section of the instruction furnishes "no guide" to determine proper compensation but leaves the jury to "roam whither they will," gives them a "roving commission," etc.

There was substantial testimony of permanent bodily injury, which we do not consider it necessary to rehearse.

The complaint of appellant is that no elements of permanent injury were defined by the instruction, and that it gave liberty to the jury to allow plaintiff for any sort of speculative loss of probable future earnings. Defendant did not submit any instruction to avoid such a possible misconstruction, for such it would be. The court said nothing expressly about future earnings. It was correct to authorize the jury to award to plaintiff such damages as would "reasonably compensate" him for the physical injuries which the jury found to be "of a permanent character."

Such was plainly the import of the sixth instruction. That part of it which refers to any permanent damage specifies injuries "upon plaintiff." That language obviously refers strictly to his physical damage; it does not suggest or authorize any allowance for future earnings. The instruction was plainly correct as far as it went. If defendant desired more definite instructions, they should have been requested. Wheeler v. Bowles, 163 Mo. 398. The rule which the trial court laid down on the measure of damages was sound. It conforms to instructions approved by courts of last resort in Missouri. Porter v. Railroad, 71 Mo. 74; Russell v. Columbia, 74 Mo. 488; Stephens v. Railroad, 96 Mo. 215; Bigelow v. Railway, 48 Mo. App. (K. C.) 367.

We find nothing else in the assignments of error or in the

very learned and able argument for appellant to require re-
mark.    The cause was well tried.    We affirm the judgment.
*Bland, P. J.,* and *Goode, J.,* concur.