THOMAS HANRAHAN, JR., an Infant, by THOMAS HANRAHAN, SR., His Guardian ad Litem, Respondent, *v.* THE NEW YORK EDISON COMPANY, Appellant.

First Department, March 13, 1925.

Motor vehicles — action to recover for injuries suffered by plaintiff when he was struck by automobile — owner of automobile was engaged by third person, who had contract to furnish transportation for defendant's inspectors, to transport inspector — owner of automobile was paid by third person — owner followed route laid out by defendant and stopped when directed by inspector who rode with him — owner of automobile was not defendant's servant — defendant is not liable.

An electric light corporation is not liable for injuries suffered by a pedestrian who was struck by an automobile which, at the time of the accident, was being used to transport an inspector of the electric light corporation on his nightly tour of inspection of street lights, where it appears that the electric light corporation had a contract with a third person to furnish automobiles for transportation of its inspectors; that said third person engaged the owner of the automobile, through whose negligence the accident happened, and paid him a stipulated price per night for the use of the automobile; that, while the electric light corporation laid out the route to be followed by the owner of the automobile, and while he stopped and started the automobile at the direction of the inspector, the corporation had no other control over him.

At the time of the accident the owner of the automobile was not a servant of the electric light corporation.

APPEAL by the defendant, The New York Edison Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Bronx on the 27th day of June, 1924, upon the verdict of a jury for $17,500, and also from an order entered in said clerk's office on the 22d day of July, 1924, denying defendant's motion for a new trial made upon the minutes.

*Charles I. Taylor* [*James J. Mahoney* with him on the brief], for the appellant.

*Thomas J. O'Neill* [*Benjamin W. Moore* of counsel; *Leonard F. Fish* with him on the brief], for the respondent.

FINCH, J.:

The plaintiff was struck and injured by a commercial automobile, which on two trials has been identified by the jury as an automobile which was operated by one Gleason and which transported an employee of the defendant over a route of inspection.

The vital issue presented upon this appeal is whether Gleason, by whose negligent operation of the automobile the plaintiff was injured, was a servant of the defendant. As was said by the Court of Appeals in passing on an appeal from a judgment heretofore recovered by the plaintiff herein (238 N. Y. 194), " The question whose employee Gleason was goes to the heart of this controversy."

It appears that the defendant engaged one Thomas Cotter to furnish an automobile and driver to take defendant's inspectors around on a tour of inspection of the street lights during the night, for the purpose of replacing defective lamps. Subsequently Cotter agreed to furnish an additional car and driver. This service was furnished at a fixed charge per car per night. The cars were not kept on the defendant's premises and the defendant furnished no oil, gas or other materials necessary for the operation and maintenance of the cars. The defendant paid Cotter by check the price agreed upon for the service furnished by Cotter, and Cotter turned over to Gleason, who owned the car operated by him, the amount received from the defendant for furnishing one car and driver. The defendant merely laid out the route over which the car was to be driven, and this route the driver covered, stopping when directed by the defendant's inspector upon said inspector discovering a defective lamp.

It is clear that a person cannot be the servant of two persons at the same time unless those persons are acting jointly. A mere division of command does not take a servant out of his general employment and transfer him to the employment of one for whom he is specially employed in the course of his general employment.

In *Charles* v. *Barrett* (233 N. Y. 127), Judge CARDOZO, writing for the court, said: " The rule now is that as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division [*Mc Namara* v. *Leipzig*, 227 N. Y. 291; *Matter of Schweitzer* v. *Thompson & Norris Co.*, 229 N. Y. 97; *Meade* v. *Motor Haulage Co., Inc.*, 233 N. Y. 527; *Driscoll* v. *Towle*, 181 Mass. 416, 418]."

And again: " Where to go and when might be determined for the driver by the commands of the defendant. The duty of going carefully, for the safety of the van as well as for that of wayfarers,

remained a duty to the master at whose hands he had received possession. Neither the contract nor its performance shows a change of control so radical as to disturb that duty or its incidence."

In *McNamara* v. *Leipzig* (227 N. Y. 291) Judge COLLIN said: "A servant lent or let by his master to another does not become the servant of the other because the other directs what work is to be done or in what way it is to be done. If the servant remains subject to the general orders of the person who hires and pays him he is still his servant, although specific directions may be given him by the other from time to time as to the work to be done. The other person has the right to exercise the degree of control of the servant essential to secure the fulfillment of the agreement between the master and himself. * * *.

" Those principles have been frequently applied to the letting or hiring of a carriage or wagon with horses and a driver to be used for the conveyance of the hirer or his property from place to place. The judicial decisions hold clearly and almost uniformly that in the care and management of the horses and vehicle, the driver does not become the servant of the hirer, but remains subject to the control of the general employer, and that, therefore, the hirer is not liable for his negligence in driving. * * *. The vehicles with the horses and driver are let with the implied understanding that the driver remained the servant of the owner, and as such had the management of the property and exercised care and control over it. The driver and the property are engaged in the owner's business and subject to his management, direction and control. It is inherent in and a part of that business that the person being transported should have the power of direction as to where and when he should be taken. The same rule is applied to the letting of an automobile and a chauffeur."

In *Braxton* v. *Mendelson* (233 N. Y. 122) the defendant Mendelson was engaged in the trucking business. The Mutual McDermott Milk Company delivered milk to customers in the city of New York. For this purpose it contracted with Mendelson for the latter to make the deliveries. One of Mendelson's trucks, through the alleged negligence of the driver, ran over and killed the plaintiff's deceased. It was held that the driver of the truck was the servant of Mendelson and not that of the milk company, the court, by ANDREWS, J., saying: " The rule governing such cases is a simple one. Was the servant whose negligence injured a third party, performing work for his master within the scope of his employment or was he loaned by his master to another to do the latter's business? In the one case the general employer is liable for his torts. In the other he is not. But while the rule

First Department, March, 1925.          [Vol. 212

is clear its application is often difficult. The true relationship between master and servant may be obscured by circumstances seemingly contradictory. Ordinarily no one fact is decisive. The payment of wages; the right to hire or discharge; the right to direct the servant where to go, and what to do; the custody or ownership of the tools and appliances he may use in his work; the business in which the master is engaged or that of him said to be a special employer; none of these things give us an infallible test. At times any or all of them may be considered. The question remains: In whose business was the servant engaged at the time? "

So, also, in *Wagner* v. *Motor Truck Renting Corporation* (234 N. Y. 31) the Hagerty Motor Trucking Company contracted to furnish trucks and drivers to Rodgers & Hagerty, Inc., for use by the latter in removing earth excavated by it. In order to furnish the trucks to Rodgers & Hagerty, Inc., it was necessary for the Hagerty Motor Trucking Company to procure trucks from others, and it hired certain trucks and drivers from the Motor Truck Renting Corporation. Through the negligence of the driver of one of the trucks so procured, while engaged in carting earth for Rodgers & Hagerty, Inc., an accident occurred. The court was unanimous in holding that the driver of the truck was not the servant of Rodgers & Hagerty, Inc., and while there was a division of opinion as to whether the Hagerty Motor Trucking Company could be held liable, apparently this was largely due to the fact that it had been assumed on the trial that responsibility rested either upon this company or upon Rodgers & Hagerty, Inc., no request having been made that the jury might find neither Rodgers & Hagerty, Inc., nor the Hagerty Motor Trucking Company liable upon the ground that the responsibility rested on the general employer, the Motor Truck Renting Corporation. Judge ANDREWS, writing for the majority of the court, said: " Concededly Rodgers & Hagerty was not here the general employer. It was engaged in a building contract. It applies to a trucking concern for trucks. In furnishing them the Hagerty Motor Trucking Company was engaged in its own peculiar line of work. * * *. Evidently here is no formal contract complete in itself which enables us definitely to fix the relationship of the parties. * * *. The whole course of the proceedings tends to show at most a division of command. As this is so, the judgment in so far as it affects Rodgers & Hagerty should be affirmed."

Judges McLAUGHLIN and CARDOZO were of the opinion not only that the driver could not be held to be the servant of Rodgers & Hagerty, Inc., but that he could not be held to be the servant of the Hagerty Motor Trucking Company. Judge McLAUGHLIN

said: " The truck, at the time of the accident, was doing no work for the Hagerty Motor Trucking Company other than enabling it to carry out the contract to furnish necessary trucks for Rodgers &' Hagerty. Under such circumstances, it seems to me that the general employer, and it alone, is responsible for the negligence of Delehanty [the driver]."

Applying to the facts in the case at bar the determinative question, " In whose business was Gleason engaged at the time of the accident? " the answer is clear. Gleason was engaged in furnishing transportation to the defendant, and in this he was not the servant of the defendant. The defendant was carrying on its business through its employee whom Gleason was transporting in fulfillment of Cotter's contract with the defendant. Gleason was thus furthering the business of Cotter by the service rendered to the defendant. There is nothing in the record to show any change of employment. At most the driver was directed where to go and when to stop, which is but a division of command such as exists in the usual hiring of a taxicab. The case at bar in principle does not differ from the hiring of a vehicle from a liveryman. It is clear that if a corporation hired a cab to take one of its salesmen from place to place for the purpose of calling on customers, the driver of the cab would not be the servant of the corporation. Nor would such driver be any more the servant of the corporation if the corporation's salesman carried with him in the cab a line of samples for exhibiting to the customers he called upon. In the case at bar the vehicle was furnished to the defendant to take one of its employees around and incidentally to carry a ladder and a pole. As was said by Judge BARTLETT in *Kellogg* v. *Church Charity Foundation* (203 N. Y. 191, 200) quoting from *Standard Oil Co.* v. *Anderson* (212 U. S. 215): " The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, though he suggests the course of the journey and in a certain sense directs it, still does not become the master of the driver and responsible for his negligence, unless he specifically directs or brings about the negligent act."

It follows that the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, MCAVOY and MARTIN, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.