BEULAH DAGLEY, RESPONDENT, v. NATIONAL CLOAK AND SUIT COMPANY AND GENERAL OUTDOOR ADV. CO., APPELLANT.*

Kansas City Court of Appeals.   April 29, 1929.

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, section 1591, p. 1428, n. 53; section 1593, p. 1431, n. 90; 4CJ, section 2304, p. 525, n. 10; Master and Servant, 39CJ, section 1584, p. 1357, n. 8; section 1592, p. 1362, n. 20; Negligence, 45CJ, section 223, p. 815, n. 80; section 237, p. 826, n. 71; section 303, p. 875, n. 77; section 312, p. 880, n. 68; section 834, p. 1262, n. 8; p. 1267, n. 35; section 836, p. 1272, n. 68; section 916, p. 1341, n. 75; section 940, p. 1363, n. 81.

*Trusty & Pugh* for respondent.

*A. L. Berger* and *Morrison, Nugent, Wylder & Berger* for appellant.

*D. C. Johns* of Counsel.

BARNETT, C.—This is a suit for personal injuries. The suit was tried on a second amended petition which was again amended at the trial after the introduction of evidence. The petition thus amended alleged that National Cloak and Suit Company owned, maintained, and operated a mercantile establishment in Kansas City, Kansas; that on December 12, 1925, the General Outdoor Advertising Company was doing some work for and on behalf of National Cloak and Suit Company in its retail store, at and over a window near a merchandise counter. For that purpose the advertising company was using a ladder, leaning against the inside of the wall over the window and resting on the floor. The plaintiff was a customer in

said store engaged near the foot of said ladder in the purchase of merchandise. The ladder slipped and turned, whereby she was injured; that the floor was smooth and slick; that the ladder was resting thereon and not fastened to the floor to keep it from slipping or falling, and a man was working thereon; that National Cloak and Suit Company knew or by due care should have known that the ladder was likely to fall or slip or turn over and cause injury to persons near by, but defendant National Cloak and Suit Company, through one of its clerks, negligently took the plaintiff from a place of safety to a point near said ladder to show her merchandise, and negligently failed to warn her of the presence of the ladder or the likelihood of its falling, and by reason thereof she was injured; that National Cloak and Suit Company negligently failed to exercise ordinary care to warn people that the ladder was likely to fall and negligently failed to exercise ordinary care to secure the ladder or to hold it in position to keep it from falling or slipping when the ladder was likely to fall unless such precautions were exercised; that the advertising company was negligent in resting the ladder upon a floor that was smooth and slick without fastening or securing it; that by reason of said facts it was likely to and did fall, and the defendant knew or by the exercise of ordinary care could have known said facts, and knew or by the exercise of ordinary care could have known that persons would likely be at the place where plaintiff was injured, and negligently failed to warn plaintiff of such danger.

The evidence most favorable to plaintiff is to the effect that plaintiff went into the store of National Cloak and Suit Company in Kansas City, Kansas, and was invited by a clerk to the end of the store near the show-window where plaintiff contemplated buying merchandise. This happened about noonday. A ladder about ten feet long rested on the floor and leaned on the top edge of the show-window. The show-window was seven or eight feet high and the bottom of the ladder rested on the floor about four feet out from the bottom of the show-window, so that the ladder was placed at an angle of about sixty degrees or more from the perpendicular. The cloak and suit company, in sweeping its floors, was in the habit of using a sweeping compound which contained oil, and the use of the oily compound had a tendency to make the pine floor smooth and somewhat slick. The bottom of the ladder did not rest against any brace nor was it cleated or secured in any manner; but those who used the ladder depended entirely upon gravity and friction to keep the ladder in its place. The ladder had remained in this position and condition since the workmen went to work in the morning. A man was working upon the ladder, and for some reason the ladder slipped and fell and struck the plaintiff, whereby she was injured.

The evidence disclosed that National Cloak and Suit Company had entered into a contract with General Outdoor Advertising Company to install an electrical sign on the outside of the building. The sign had been hung and the man who was working on the ladder was engaged in wiring which was necessary to connect the electrical wires on the inside of the building with the sign. The advertising company did not have a license to do electrical work in Kansas City, Kansas, and it had therefore entered into a written contract with the Murray Electrical Company to do the wiring. The written contract was in the form of a proposal from the electrical company to the advertising company to *furnish all labor and material for the correct installation of electrical wiring* in the cloak and suit company's store in Kansas City, Kansas, and provided for enlarging the service from one hundred ampere three pole capacity to two hundred ampere three pole capacity, and for running three No. 6 wires from a meter board in the basement to terminate on top of the window with switch near the window on the first floor, and provided that all materials should be first class and installed according to Underwriters Rules and Regulations and should pass the city inspection. This proposal was accepted in writing by the advertising company. Defendant's evidence was to the effect that the electrical company did the work and was paid for it. However, Mr. Robertson, the electrician for the General Outdoor Advertising Company, testified that he was foreman of the electrical department of the advertising company; that he was in the store of the cloak and suit company on the day of the injury; that he went to work in the store at about ten minutes until nine in the forenoon and that he took one of the employees of the advertising company to work with the electric company's men; that he sent his helper to help the Murray men on the inside. It was this helper, one Sullivan, who was on the ladder which slipped and fell. Mr. Robertson tesified that he turned the helper over to Murray of Murray Electrical Company; that "Murray allows anyone with him and he used this man to save cost, to save paying for an extra helper for his men," that to save this cost he agreed to take one of the advertising company's employees and use him. The advertising company's foreman testified that he was present to "tell the boys how to do the work" and that he directed the men what to do; that he was just there supervising and that it was understood at the time of letting the job that he was to supervise; that he "did not do any of the actual work but told the others how to do it and what to do;" that the advertising company paid Sullivan and that the electric company would have had to charge a greater price if they had had to hire a supervisor and a man to take the place of the employee furnished by the advertising company. The attorney for the advertising company asked the foreman:

"Q. What do you mean when you say to these gentlemen that you were supervisor? Did you give the orders and have charge of Murray's men?"

The foreman answered: "Yes, sir."

At request of plaintiff the court gave instruction B, which is as follows:

"If you find from the evidence that at the time and place referred to in the evidence the floor where the ladder rested was smooth and slick and that the ladder was not fastened to the floor, and that the General Outdoor Advertising Company was using said ladder; and,

"If you further find from the evidence that by reason of the facts, if they existed, set forth in the above paragraph, the ladder was likely to, and did, slip or fall and injure the plaintiff while she was at the place referred to in the evidence; and,

"If you further find from the evidence that the defendant General Outdoor Advertising Company knew, or by the exercise of ordinary care should have known, of the facts above set forth, if you find they existed, when the plaintiff was taken or went to said place, and that said defendant knew or by the exercise of ordinary care should have known that persons would likely be and that plaintiff was at said place in time to have warned the plaintiff of the danger from said ladder, if such danger existed, and failed to warn plaintiff thereof if so; and,

"If you further find from the evidence that because of all the foregoing facts, if you find from the evidence they existed, the defendant, General Outdoor Advertising Company, failed to exercise ordinary care for the safety of the plaintiff, and that such failure of said defendant, if it did so fail, directly caused her to be injured, if she was, by said ladder, then you must return a verdict against said General Outdoor Advertising Company, and in favor of the plaintiff, Beulah Dagley."

There was a verdict for plaintiff against both defendants and both have appealed.

## OPINION.

Neither the National Cloak and Suit Company nor the General Outdoor Advertising Company has made the contention in this court that plaintiff was guilty of contributory negligence as a matter of law. Both appellants in their assignments of error state that the court erred in refusing to sustain a peremptory instruction in the nature of a demurrer to the evidence and the second assignment of error by National Cloak and Suit Company states that the court erred in submitting the case to the jury because the evidence did not establish or tend to establish negligence on the part of the cloak and suit company or on the part of anyone. The

cloak and suit company in its brief raises the question as to whether or not that company was negligent and also raises the point that it is not liable for the acts of the General Outdoor Advertising Company or its servants or subcontractors, on the ground that the advertising company was an independent contractor. The advertising company in its brief raises the point that the Murray Electric Company was an independent contractor for whose acts and omissions the advertising company was not responsible. We are inclined to agree with the respondent that the only defenses as to negligence are that the cloak and suit company claims that whatever negligence there was must be attributed to the advertising company, its agents and subcontractors, and the advertising company claims that that negligence must be attributed to the electric company.

The petition was not drawn upon the theory that the advertising company was the agent of the cloak and suit company. It is the duty of a store keeper to keep the premises into which he invites his customers and prospective customers in a reasonably safe condition, and if there be anything dangerous in the store building it is the duty of the store keeper to warn his invitees of the presence of the danger or to withdraw that part of the premises where the danger exists from their use and occupation by setting up barriers or by adopting some other means that will plainly indicate that that part of the premises is not open to the customers. [45 C. J. 826 to 831, inclusive.] The evidence in this case shows that some one placed a ladder in that part of the store building where customers were expected to go. The ladder was placed upon a floor that was frequently oiled, and it leaned at such an angle that it would not slip of its own weight, but was likely to slip if a man should engage in work while standing upon the rungs unless the ladder was secured. The plaintiff was invited by the defendant to go to the far part of the store where she would be exposed to injury if the ladder should slip, and she was there invited to give her attention to merchandise, but not to the ladder. The jury had a right to find that the defendant cloak and suit company negligently failed to maintain that part of the store where customers were invited in a reasonably safe condition, because the ladder had stood in its unstable condition from the time the electricians went to work in the morning until sometime near noonday.

We fully agree that the advertising company was an independent contractor. But a store keeper may not relieve himself of the duty to use reasonable care to keep his premises in a reasonably safe condition for the use of his invited customers and his prospective customers by contracting with others and relying upon them to take the necessary precautionary measures. [45 C. J. 880; Pooler v. Sargent Lumber Co., L. R. A. 1915F, 1125; Golson v.

Covington Mfg. Co., 205 Ala. 226; Pitcher v. Lennon, 42 N. Y. S. 156; Couer d'Alene Lumber Co. v. Thompson, 215 Fed. 8.]

We think there was sufficient evidence to justify a finding that the ladder was used in its unsafe and unsecured position by the advertising company and not by the Murray Electric Company. It is true a written contract was introduced in evidence whereby Murray Electric Company contracted to do certain wiring for the advertising company and that the ladder was being used to install the wiring at the time when the injury occurred. However, it is not true that when a written contract is introduced in evidence then the question as to whether or not the negligence complained of was that of a servant or an independent contractor is altogether a matter of law to be determined by the court. If the evidence shows that one man has done a negligent act and it is sought to charge another with liability therefor under the rule, *respondeat superior*, than if there be a written contract between the two the construction of that contract is a matter for the court and not for the jury, and the parties to the contract will not be permitted to give their conclusions as to whether or not the relationship is that of servant or independent contractor. But to hold that what was said on paper should conclusively control, regardless of what was done, would be an invitation to those who employ labor to evade responsibility for their negligence by written recitations with straw men and insolvents without regard to their competency or special training; all of which could be done without the slightest inconvenience if the employers might nevertheless direct and control the work, the means and details as well as the result, without waiving the defense that the negligent act was that of an independent contractor. In this case one Sullivan was the regular employee of the advertising company. He was under the control and directions of one Robertson, another employee of the advertising company and its foreman. Robertson ordered Sullivan to help do the wiring. No foreman or superintendent of the electrical company was present where the work was being done. Sullivan received his orders from Robertson. Robertson superintended the work and told all the workmen what to do and how to do it. Sullivan was paid by the advertising company. He was not even acquainted with the officers or superintendent of the electric company, but all of his work was done because it was so ordered by Robertson, who was his foreman as the employee of the advertising company. We think that the inference is very strong that the contract between the advertising company and the electric company was a device to evade the payment of the Kansas license tax, but it was contemplated by the parties that the foreman of the advertising company should superintend and direct the work and furnish part of the labor. Appellants have cited cases wherein it is held that one is an independent con-

tractor notwithstanding the fact that the one with whom he contracts reserves the right to superintend the work, to see that it is done according to contract. We fully recognize the doctrine declared in those cases. But if the one for whom the work is done goes further and reserves the right to control the mode of doing the work as well as the result, then he who does the work is a servant, and not an independent contractor. [Aubuchon v. Securities Const. Co., 291 S. W. 187; Lawhon v. St. Joseph Veterinary Laboratories, 252 S. W. 44; Kiser v. Suppe, 133 Mo. App. 19; Fitzgerald v. Cardwell, 207 Mo. App. 514; Borah v. Zoellner Motor Car Co., 257 S. W. 145; O'Neill v. Blase, 94 Mo. App. 648; Simmons v. Murray, 234 S. W. 1009; Flori v. Dolph, 192 S. W. 949; Hoelker v. American Press, 296 S. W. 1008; Thomassen v. West St. Louis Water & Light Co., 278 S. W. 979; Semper v. American Press, 273 S. W. 186.]

The contract between the advertising company and the Murray Electric Company provided that the electric company would furnish labor and material for the correct installation of the electric wiring. Standing by itself, this contract implied that the electric company would install the wiring in its own way and that only the result was subject to the approval of the advertising company. But the electric company did not furnish all the labor and it did not install the wiring in its own way. The advertising company furnished part of the labor and directed how the installation should be accomplished. Appellant claims that Sullivan was loaned by the advertising company to the electric company and that he was for the time being the servant of the electric company. The evidence was that the advertising company retained control and the right to direct what Sullivan should do and how he should do it. He was therefore the employee of the electric company. [Standard Oil Co. v. Anderson, 212 U. S. 215; Scherer v. Bryant, 201 S. W. 900; Hanrahan v. New York Edison Co., 208 N. Y. S. 633.]

Appellant General Outdoor Advertising Company in its assignments of error states that the court erred in permitting plaintiff to amend her petition after the close of the evidence so as to allege a different cause of action than that alleged in the petition upon which the case went to trial, and erred in refusing to sustain appellant's plea of surprise because of such amendment, and erred in refusing to discharge the jury and continue the case. This is the only mention of this assignment of error. No reasons are given nor authorities cited in support of this assignment under the points and authorities or the argument. The assignment is deemed to be abandoned. Without regard to the sufficiency of the brief to present these points for decision, they cannot be considered by us for the reason that the second amended petition upon which the parties went to trial as it existed before the amendment is not to be found in the bill of exceptions. This court cannot compare an

amended petition with the petition as it existed preceding the amendment and thus determine whether or not the amendment was properly allowed unless the preceding petition is set forth in the bill of exceptions. [The Farish Co. v. Brown Evans Mfg. Co., 230 S. W. 365, and authorities cited.]

Appellant General Outdoor Advertising Company in its assignments of error alleges that the court erred in refusing to give appellant's instruction A-1 and in giving plaintiff's instruction B, C, and D, and in giving National Cloak and Suit Company's instruction 4 for the reason that said instructions are not based upon the law or the evidence in the case. No further mention is made of any of these assignments of error in the points and authorities or in the argument, except concerning the giving of instruction B. It is contended that that instruction permitted a recovery upon a different cause of action than that stated in the petition, that it does not fall within the purview of either the evidence or the petition, and that it permitted a recovery upon a presumption of negligence when the petition pleaded specific negligence. The instruction is set out in the statement. It submits the identical cause of action alleged in the petition. It was the cause of action revealed by the evidence. We do not understand the statement that this instruction permitted a recovery upon a presumption of negligence. The instruction certainly does not proceed upon the *res ipsa loquitur* theory, nor does it assume that defendant was negligent. It requires the jury to find each and every fact necessary to permit a finding of negligence, and in addition thereto, it requires the jury to find that those facts did constitute negligence.

National Cloak and Suit Company claims that the maintenance of the floor in its then condition was not of itself negligence, and that in the light of past experience National Cloak and Suit Company did not fail to exercise ordinary care. There was no allegation that the cloak and suit company was negligent in maintaining an oily floor. The charge is that it negligently permitted a ladder to stand upon that oily floor with nothing but friction and gravity to hold it in position, although it was obvious that the ladder leaned at such a great angle that it was likely to slip if a man should work while standing upon it; that it was obvious that the ladder was being so used, and that the cloak and suit company invited its customers to inspect merchandise in that part of the building where this condition existed. The National Cloak and Suit Company did not act in the light of past experience so far as this record is concerned. There is no evidence that it ever before permitted a ladder to remain in its store building in such a precarious condition. The witness Sullivan testified that he had used ladders before without securing them and they had not slipped. This would not establish as a matter of law that the cloak and suit company was free from

negligence in permitting this ladder to stand upon this particular floor in its then condition at an angle of at least sixty degrees from the perpendicular, while a man stood upon it and engaged in this particular work. Appellant's statement that the National Cloak and Suit Company was not an insurer of plaintiff's safety is hardly relevant. There is no place in the whole record where any claim was made either directly or by inference that it was an insurer. The petition pleaded specific negligence. There was evidence to support the allegations of the petition, and the instructions proceeded upon the theory outlined in the petition.

The judgment is affirmed. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.